STEPHENS COUNTY v. PALO PINTO COUNTY.

(Court of Civil Appeals of Texas. Ft. Worth. March 8, 1913. Rehearing Denied April 12, 1913.)

COUNTIES (§ 7*)—BOUNDARIES—ESTABLISH-MENT—STATUTORY PROVISIONS.

An established and definitely marked boundary line between two counties, recognized by the Commissioner of the General Land Office and the two counties at the time of the adoption of Rev. Civ. St. 1911, § 1400, providing that the county boundaries as recognized and established are adopted as the true boundaries, is the boundary line, though not mathematically correct.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 3; Dec. Dig. § 7.*]

Appeal from District Court, Parker County; J. W. Patterson, Judge.

Action by Palo Pinto County against Stephens County. From a judgment for plaintiff, defendant appeals. Reversed and rendered.

N. N. Rosenquest and Fred W. Frost, both of Breckenridge, and Alexander, Power & Ridgway, of Ft. Worth, for appellant. J. T. Ranspot, of Palo Pinto, J. C. Houts, of Mineral Wells, and Stennis & Wilson, of Weatherford, for appellee.

SPEER, J. This is an action brought under article 1385, Revised Statutes 1911, by Palo Pinto county against Stephens county to establish the boundary line between those counties. The honorable district judge of Parker county, before whom the cause was tried, made the following findings of fact:

"(1) I find that in October, 1883, the commissioners' court of Stephens county appointed W. M. McConnell, then county surveyor, to proceed, on the 3d Monday in November, 1883, to survey and establish the boundary line between plaintiff and defendant counties, and that the commissioners' court of Palo Pinto county appointed Joel McKee, county surveyor of that county, to join in that survey, and that said McConnell and McKee, together with H. M. Berry, deputy surveyor of Palo Pinto county, began on the 3d Monday in November and made a survey of the boundary line between said counties, and that said line is practically the same as the line surveyed by J. J. Metcalf in 1857; that the field notes of said survey of 1883 were returned to, approved, and recorded in the minutes of the commissioners' court of each of said counties; that in November, 1887, the commissioners' court of Palo Pinto

county sent a certified copy of said field notes to the General Land Office of Texas, but said office, nor the commissioner, never recognized said filed notes; that only five surveys through which said line passed were called for by said field notes, and no plat accompanied the same.

"(2) I find that said McConnell and McKee survey of 1883 was a well-marked line upon the ground, with marked corners and milestones, and that the field notes are the same as set out in plaintiff's petition, and that the plat of said survey sent to the General Land Office by M. V. Smith in 1906 is a correct plat of the said survey of 1883.

"(3) I find that T. W. Brown, a practical surveyor, made a survey of said boundary line between plaintiff and defendant in 1888 and 1889, acting under orders of both the county and commissioners' courts of Stephens county, but I find the evidence that notice was given to Palo Pinto county is insufficient to show legal notice, and I find that Palo Pinto county did not appoint a surveyor to assist in making said survey; that the Brown field notes and proper plat were returned and recorded in the minutes of the county and commissioners' courts of Stephens county, and in 1889 a certified copy of said field notes and plat were returned to and filed and approved by the General Land Office, and since that date has been recognized by the General Land Office as the true boundary between said counties; that said Brown line of 1889 began for its north starting point 30 miles west of the west line of Parker county.

"(4) I find that said Brown line was, and is since 1889, a well-marked line upon the ground, with marked corners and milestones; that its field notes are the same as set out in the defendant's original answered herein.

"(5) I find that said line of 1899 is, at its north end, 797 vs. and at its south end 1,100 vs. east of the McConnell-McKee line of 1883.

"(6) I find that from 1857 up to 1889 the territory in dispute was under the supervision and control of Palo Pinto county, and that since 1889 and up to the present time said disputed territory has been under the supervision and control of Stephens county."

Upon the facts so found, which we adopt, in so far as necessary to support our judgment, judgment should have been rendered establishing the boundary line according to the field notes set out in appellant's original answer. In the view we take of the case, no other question need be considered or decided, save that raised by appellant's contention that article 1400 (822) of the Revised Statutes of 1911 is decisive of the controversy in its favor. That article was adopted in 1895, and reads as follows: "The county boundaries of the counties in this state as recognized and established are adopted as the true boundaries of such counties, and the acts

creating such counties and defining the boundaries are continued in force." The above findings show without dispute, we think, that at the time this act became a law the boundary line contended for by appellant had been established, and was recognized by the Commissioner of the General Land Office and both interested counties. It can make no difference whether this line, commonly known as the Brown line, is mathematically correct or not. It was the purpose of the act quoted to quiet all controversies over county boundary lines where, at the time the act took effect, such lines were established (that is, definitely marked and known) and recognized, irrespective of the accuracy of such surveys. It is a wholesome statute, and should be liberally construed and enforced.

The judgment of the district court is accordingly reversed, and judgment here rendered establishing the boundary line between appellant and appellees according to the field notes as set out in appellant's original answer.

Reversed and rendered.