HALE COUNTY v. LUBBOCK COUNTY.
(No. 8488.)

(Court of Civil Appeals of Texas. Ft. Worth.
Feb. 17, 1917. On Motion for Rehearing, March 31, 1917.)

1. COUNTIES ⊂⊃8—BOUNDARIES—VALIDATION
—STATUTES—EVIDENCE.
Evidence *held* to bring a boundary line between counties run and marked by a state surveyor within Rev. St. 1895, art. 822, declaring county boundaries as then recognized and established to be adopted as the true boundaries.
[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 4–6.]

2. CONSTITUTIONAL LAW ⊂⊃48—REVISIONS—
PRESUMPTION.
A presumption of validity of enactment of Rev. St. 1895, art. 822, adopting county boundaries then recognized and established, arises from its presence therein.
[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 108–111.]

3. COUNTIES ⊂⊃7—BOUNDARIES—VALIDATION
—STATUTE.
Rev. St. 1895, art. 822, declaring county boundaries as then recognized and established to be adopted as the true boundaries, is not limited to those established in accordance with statute.
[Ed. Note.—For other cases, see Counties, Cent. Dig. § 3.]

On Motion for Rehearing.

4. COUNTIES ⊂⊃7—BOUNDARIES—VALIDATION
—RECOGNITION.
Confusion in abstract records as to what county certain surveys are in not being referable to location of a county line did not interfere with operation of Rev. St. 1895, art. 822, adopting county boundaries then recognized and established.
[Ed. Note.—For other cases, see Counties, Cent. Dig. § 3.]

5. NEW TRIAL ⊂⊃63 — SPECIAL FINDINGS —
ATTACK IN TRIAL COURT.
Vernon's Sayles' Ann. Civ. St. 1914, arts. 1986, 1990, declaring a special verdict conclusive between the parties as to the facts found, and requiring the court, unless they be set aside, to render judgment thereon, does not prevent motion for new trial after judgment on the ground of the special findings being unsupported by evidence, and thereby having a review of the question on appeal; article 2023 allowing two days after rendition of judgment for filing motion for new trial; article 1612 providing that when a motion for new trial is filed the errors assigned in it shall constitute the assignments of error on appeal; Court of Civil Appeals rule 24 (142 S. W. xii) providing that assignment of error not distinctly set forth in the motion for new trial in the trial court shall be considered waived; and rule 71a for district and county courts (145 S. W. vii) providing that a motion for new trial shall be filed where parties desire to appeal from a judgment except for a fundamental error, or where the statute does not require such a motion.
[Ed. Note.—For other cases, see New Trial, Cent. Dig. § 128.]

Appeal from District Court, Nolan County; W. W. Beall, Judge.

Suit by Lubbock County against Hale County. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Ocie Speer, of Ft. Worth, Martin, Kinder, Russell & Zimmermann, of Plainview, and Beall & Douthit, of Sweetwater (Marvin H. Brown, of Ft. Worth, of counsel), for appellant. R. A. Sowder, of Lubbock, R. N. Grisham, of Sweetwater, and Jno. R. McGee and W. F. Schenck, both of Lubbock, for appellee.

DUNKLIN, J. Lubbock county instituted this suit against Hale county to fix the boundary line between those two counties. Hale county is situated immediately north of Lubbock county, and hence the line in dispute was the south boundary of the former county and the north boundary of the latter county. It was the contention of Lubbock county that the line heretofore supposed to be the true boundary was not such, but that the true boundary was north of that line. Upon the trial of the case before a jury this contention was sustained, and from a judgment in accordance therewith, Hale county has appealed.

The two counties were created by an act of the Legislature passed August 21, 1876 (Acts 15th Leg. c. 144). Hale county was organized in August, 1888, and Lubbock county was organized in February, 1891. The lines of the two counties as created run due east and west and north and south, each line being 30 miles in length, and the field notes of Lubbock county fix the beginning corner of that county to be the northwest corner of Hockley county; and the field notes of Hale county fix the beginning corner of that county as the northwest corner of Floyd county. In the field notes of the two counties no natural or artificial objects are called for, thus leaving the true location upon the ground of the lines of the

two counties to be established by surveys according to course and distance from the beginning corners given wherever such beginning corners might be.

The evidence shows without contradiction that during the summer of 1891, shortly after the organization of Lubbock county, the county judges of Hale and Lubbock counties agreed to request the state land commissioner to appoint a surveyor to run and mark the boundary line between the two counties, and that each county would pay its pro rata part of the expense of that work. Prior to said agreement, the commissioners' court of Hale county passed an order authorizing Judge Burch "to make a contract with some competent surveyor to establish the boundary lines of Hale county at as early a date as possible, and upon the best possible terms, and that he notify the proper authorities in adjoining counties when said lines were to be established." Also on June 8, 1891, before the survey was made, the commissioners' court of Lubbock county agreed to pay its pro rata of the expense for establishing the boundary line between it and Hale county to be surveyed by the state surveyor. The request so agreed upon was presented by the county judge of Hale county, and in obedience thereto the state land commissioner appointed Ira Millington, one of the state surveyors, to do the work. The county judge of Hale county notified the county judge of Lubbock county of such appointment, and also of the time and place appointed for making the survey. At the appointed time and place, Judge Burch, the county judge of Hale county, and also L. A. White, the county surveyor of Hale county, met Millington, who then proceeded to survey and mark the boundary between the two counties. In running that line they began at its east end and ran west, fixing the east end as the southeast corner of Hale county and the northeast corner of Lubbock county, fixing the west end of the line as the southwest corner of Hale county and the northwest corner of Lubbock county. Each of the two corners was plainly marked with a stone 20 by 30 inches in diameter and a charred cedar stake set in the ground. The terminus of each mile of the line so run was marked by digging a hole in the ground, placing therein charcoal and covering the same with a mound 2 or more feet in height, and digging two pits, one on the east and one on the west of the mound, each pit being 2 feet square and 12 inches deep. Judge Shannon, the county judge of Lubbock county, who is now dead, was not present during the survey of that line, but one of the county commissioners of Lubbock county, at the request of Judge Shannon, was present a part of the time the work was being done, but it seems took no part in it.

The field notes of the survey were reported to and filed in the general land office of the state on November 16, 1891. The land commissioner examined and approved the same, and ever since that time the boundary line between the two counties as so surveyed by Ira Millington, state surveyor, and L. A. White, county surveyor, of Hale county, has been recognized in the office of the land commissioner as the true boundary line between Hale and Lubbock counties.

On November 14, 1891, after the survey had been finished, the commissioners' court of Lubbock county passed an order accepting and approving the line so run as the true boundary line between the two counties, and allowed an account of $70 against the county as its pro rata part of the expense of said survey. Likewise, on November 27, 1891, the commissioners' court of Hale county also approved the survey so made and adopted the line as the true south boundary line of that county. On April 18, 1892, the commissioners' court of Lubbock county, by an order duly entered in its minutes, ordered J. B. Jones, the county surveyor of Lubbock county, to survey and establish east, south, and west boundaries of Lubbock county, beginning at the northeast corner of the county as established by the state surveyor, Ira Millington, as indicated by the field notes of said survey, and specifically recognizing the east and west termini of said line as the northeast and northwest corners of Lubbock county, respectively. In obedience to that order, Jones, the county surveyor of Lubbock county, did survey the east, south, and west boundaries of Lubbock county, and made a report thereof to the commissioners' court, showing a plat of the boundary lines so established by him, including the north boundary line, which he certified as being a correct copy of the plat and field notes made by Ira Millington as the correct boundary line between Lubbock and Hale counties. That report and map by Jones was filed for record in the office of the county clerk of Lubbock county on June 30, 1892, and was duly recorded July 12, 1892. J. B. Jones was elected county surveyor of Lubbock county in the spring of 1891 as soon as the county was organized, and he filled the office until the fall of 1896.

The following is article 1400, Vernon's Sayles' Texas Civil Statutes, which is found in the Revised Statutes of 1895 (article 822):

"The county boundaries of the counties in this state as now recognized and established are adopted as the true boundaries of such counties, and the acts creating such counties and defining the boundaries are continued in force."

Appellant invokes that statute in connection with its contention that the evidence conclusively shows that ever since the survey of the boundary line between the two counties was made by Ira Millington and his work approved by the commissioner of the land office and by the commissioners' courts of the two counties, the line so established by Millington has been recognized and adopted

as the true boundary between those two counties. We are of the opinion that such contention is correct.

P. F. Brown, the county judge of Lubbock county from 1894 to 1898, and J. B. Jones, who was county surveyor for the same county from 1891 to 1896, both testified, in effect, that they, in their official capacities, recognized the Millington line as the true boundary line between the two counties, and neither of those officials ever exercised any jurisdiction north of that line. The evidence further shows without contradiction that the line was recognized by the officers of the county in the selection of jurors, laying out of roads, and in establishing voting precincts. All of the county officers of Hale county likewise recognized the Millington line as the true boundary line at all times after it was established, and no controversy between the officers of the two counties with respect thereto ever arose until within about 3 years prior to the institution of this suit, which was filed March 9, 1915, more than 20 years after the Millington line was established. In support of its contention that the Millington line was not so recognized by the officers of the two counties, appellee has cited the testimony of Judge Burch that he did not remember that any one lived in Hale county within a half mile of the Millington line, and the further testimony of Judge P. F. Brown, to the effect that during his incumbency in the office of county judge he did not remember any person eligible to jury service who resided in Lubbock county within a half mile of the Millington line, and his further testimony as follows:

"As to whether or not while I was county judge of Lubbock county there frequently arose before the commissioners' court questions as to what county was entitled to taxes on lands lying near the purported Millington line between Lubbock and Hale counties, such questions arose several times. I think that such questions arose every time that the tax rolls came up; that we had this controversy every year. As to whether or not it is a fact that no question came up before me during my whole tenure as county judge and presiding officer of the commissioners' court of Lubbock county, other than questions as to taxes that in any way involved the location of the north boundary line of Lubbock county; that is all the question that came up."

. R. E. Burch, who was deputy sheriff of Hale county from January, 1892, to November, 1894, and sheriff from the latter date to November, 1906, and a part of whose duties was to collect the taxes, testified without contradiction that some of the land situated in Lubbock county was abstracted as being in Hale county, and some of the land situated in Hale county was abstracted in Lubbock county; and in such cases under a ruling of the state land office, the Hale county officers collected on the lands in Lubbock county, and the Lubbock county officers collected taxes on lands that were in Hale county, but that there was never any confusion between the officers of the two counties with

respect to such taxes, and that there was never any dispute between the officers of the two counties as to the location of the true boundary line between the two counties.

It is quite clear that the testimony of Judge P. F. Brown quoted above, that questions with respect to taxes on lands lying near the Millington line arose several times while he was the presiding officer of the commissioners' court of Lubbock county, had reference to questions only arising from mistakes in the abstracts of the lands of the two counties referred to in the testimony of Sheriff Burch. For Judge Brown testified specifically that he was with the surveyor, Jones, when he surveyed the east, south, and west lines of Lubbock county; that he saw the corners established by Millington; that he found the pipe driven in the ground that was called for in the Millington survey as the northeast corner of Lubbock county; that he was familiar with the history of the survey made by Millington; that he knew several other counties who helped to pay for the work run by Millington; and further testified as follows: ·

"I did not exercise any jurisdiction over any territory north of said line while I was county judge of Lubbock county; I thought the county line between Hale and Lubbock counties was settled, and I, in my official capacity, did recognize this line as the settled boundary line between Hale and Lubbock counties, prior to 1896, while I held said office, in the selection of jurors for my court, in the laying out of roads, voting precincts, etc. As to when I first heard there was any dispute as to the proper location of the boundary line between Lubbock and Hale counties, it has been within the last two or three years. * * * While county judge I did recognize the Millington line as the boundary line between Hale and Lubbock counties."

Both L. A. White, who, as county surveyor of Hale county, assisted Millington in running the line, and R. E. Burch, the sheriff, testified without contradiction that they recently went over the line and found not only the corners, but several of the monuments placed at the end of each mile by Millington; White testifying that such identification was made by him in the year 1914, and Burch testifying that he went over the line and found those monuments in 1915.

[1] In the case of Stephens County v. Palo Pinto County, 155 S. W. 1006, this court reversed the judgment of the trial court and rendered judgment in favor of the appellant, under and by virtue of the provisions of article 1400, because the evidence conclusively established the fact that prior to, and up to, the year 1895, the boundary contended for by the appellant was recognized and established as the true boundary between those two counties. And we are of the opinion that that article of the statute and the decision noted are applicable in the present suit, and, under the undisputed facts above stated, are conclusive against the claim of Lubbock county, with respect to the proper location of the boundary line in controversy.

In the present suit the jury found that the true boundary line between the two counties was north of the line established by Millington, and there was evidence tending to support that finding, if plaintiff's theory as to how that boundary should be located be accepted as correct; but the correctness of which was controverted by competent evidence, as hereinafter noted. And appellee insists that article 1400 of the present Revised Statutes was, by the codifiers, inserted in the revision of the statutes adopted in 1895, contrary to the provisions of article 3, § 43, of the Constitution, and the powers delegated by the act of the Legislature passed in 1891 appointing them; and, never having been passed by an independent act of the Legislature, could not operate to establish county boundaries materially different from the boundaries theretofore existing, without violating article 9, § 1, of the Constitution of Texas, which prohibits the taking of territory from one county and including it in the boundaries of another.

[2] In the codification of the Revised Statutes of 1895, there is no marginal notation or other specific showing that that article was added by the codifiers who had been theretofore appointed to do such work in the year 1891, or that it was passed at any former session of the Legislature, or by any independent act during the session of 1895. In other words, the codification is silent as to whether or not that article had previously been enacted by the Legislature or was enacted by some separate and independent act of the Legislature of 1895, or whether the same was added as an article of the Revised Statutes by the codifiers. In support of its contention that article 1400 was added by the codifiers in the revision of 1895, appellee says that the statute is not to be found in any of the published acts of any of the prior Legislatures. Article 1400 was a validating or curative act merely making definite the boundary lines of counties which had not theretofore been fixed upon the ground when the counties were organized, and it cannot be seriously questioned that the Legislature had constitutional authority to pass such an act so long as the same did not operate to take territory from one county and include it within the boundaries of another, and the proof in the present case would not justify a conclusion that that constitutional restriction was violated when the statute is applied to the line run by State Surveyor Millington.

It is a familiar rule that with respect to mere matters of procedure or methods of enacting a statute, every reasonable presumption will be indulged in favor of the validity of such statute. 36 Cyc. 971, 974. In Langston v. Canterbury, 173 Mo. 122, 73 S. W. 151, one of the questions raised was stated as follows:

"The learned counsel for respondents challenge the authenticity of the statute as it now appears in the revision of 1899, and as it appears in that of 1889, and say that an examination of the Session Acts from 1879 to 1889, inclusive, shows no act of the Legislature amending section 230, Revised Statutes 1879."

The court overruled that contention upon the ground that the volumes of the Revised Statutes were as authoritative as were the volumes containing the Session Acts, and that the verity of either one could not be questioned in the face of the original documents on file in the office of the secretary of state. To the same effect is Selders v. Kansas, etc., Ry. Co., 19 Mo. App. 334. See, also, 36 Cyc. 1243 to 1251, inclusive. And in Sutherland Stat. Const. § 155, the following is said:

"The fact of a revision raises a presumption of a complete Code or a complete treatment of the subjects embraced in it."

And in passing it may be noted that in the present suit no proof was offered of any legislative journals, or of any other documents on file in the office of the secretary of state to establish appellee's contention. In 36 Cyc. 971, the following is said:

"The incorporation of an act into a Code and its subsequent re-enactment cures defects which may have existed in the original act by reason of failure to comply with formal requisites."

The case of Daniel v. State, 114 Ga. 533, 40 S. E. 805, supports the text quoted. See, also, Central Ry. of Ga. v. State, 104 Ga. 831, 31 S. E. 531, 42 L. R. A. 518; McFarland v. Donaldson, 115 Ga. 567, 41 S. E. 1000.

"The Legislature by repeatedly recognizing a law invalid for failure to comply with certain constitutional requirements as to form and procedure may effectually ratify it and make it valid." 36 Cyc. 975, and decisions cited in note which support the text.

Article 1400, which appears in the Revised Statutes of 1895, has been brought forward and continued as a part of our statute laws up to the present date. It was included in the Revised Statutes of 1911. And section 7 of the final title of the Revised Statutes of 1879 has been brought forward and included in the revisions of 1895 and 1911. That section is as follows:

"That no general or special law heretofore enacted validating or legalizing the acts or omissions of any officer, or any act or proceeding whatever, shall be affected by the repealing clause of this title; but all such validating or legalizing statutes whatsoever now in force in this state are hereby continued in force, and the same shall be as effectual for all purposes after as before the Revised Statutes go into effect."

The validity of article 1400 was recognized by this court in Stephens County v. Palo Pinto County, cited above, which was decided April 12, 1913, and the jurisdiction of Courts of Civil Appeals in such suits is final. Notwithstanding that decision, the Legislature which met in 1915 has not seen fit to modify or repeal the statute. It is to be noted further that article 1400 in no manner purports to change, modify, or

amend any law existing prior to 1895, but was merely a validating act.

All of the facts recited above with respect to the history of article 1400 greatly strengthen the presumption otherwise obtaining of its validity as against the objection thereto by appellee, and which presumption we must enforce, without regard to the question whether or not if it was improperly included in the revision of 1895 it was afterwards validated by its inclusion in the revision of 1911; which question we find it unnecessary to decide. And, as said in Stephens County v. Palo Pinto County, supra, article 1400 "is a wholesome statute, and should be liberally construed and enforced."

[3] In the present suit, it was agreed that no proceedings were had in the county courts of either of the counties relative to the establishment of the boundary between the two counties, and appellee insists that the commissioners' courts of the two counties had no statutory authority to fix the boundary line, but that the authority so to do was vested exclusively in such county courts, and in the district court, under and by virtue of the provisions of chapter 4, title 28, Vernon's Sayles' Texas Civil Statutes, which embraces articles 1375 to 1386, inclusive. It is insisted that by article 1400 it was intended that boundary lines theretofore "recognized and established" were those only which had been established in accordance with the provisions of that chapter. We do not concur in that view. We do not think it could be reasonably supposed that the Legislature intended to validate boundary lines that had already been legally established and fixed upon the ground. Evidently the act was intended to preclude controversies which might arise in the future over lines which were then recognized as the true boundaries, and which were approximately correct, and the recognition of which did no violence to any constitutional provision. In the present suit, the proof shows that in order to determine the boundary in dispute, it was necessary to take as a starting point the northwest corner of Baylor county some 120 miles distant from the northeast corner of Lubbock county. The proof further shows that the correct location of that corner was in dispute prior to the year 1895; A. D. Kerr, the surveyor, testifying that in 1888 and 1889 he located what he deemed to be the true northwest corner of Baylor county, which was different from the corner theretofore established by a surveyor named Wessenrood. Kerr further testified that there was then a dispute about which was the true northwest corner, and that was one of the disputed issues upon the trial of the present suit.

In view of the foregoing conclusions, it becomes unnecessary to discuss the numerous assignments of error presented in appellant's brief, or to refer further to the voluminous record before us, since it follows from what we have said that the trial court should have instructed a verdict in favor of the defendant, Hale county, and for the error in refusing so to do the judgment is reversed and judgment is here rendered that appellee, Lubbock county, take nothing by its suit, and that the line surveyed by Ira Millington be, and the same is hereby, adjudged to be the true boundary line between appellant and appellee.

Reversed and rendered.

### On Motion for Rehearing.

[4] In the first part of our opinion on original hearing we said:

"It was the contention of Lubbock county that the line heretofore supposed to be the true boundary was not such. * * *"

The line referred to in that statement was the one established by Ira Millington. Appellee now cites additional testimony to show that we were incorrect in our further statement, in effect, that until about 2 years prior to the institution of this suit no controversy arose between the officers of the respective counties relative to the question whether or not the Millington line was the true boundary line between those counties. A part of the testimony so referred to is that of the witness Flynn, who served as sheriff and deputy sheriff of Lubbock county for some 10 years prior to the trial of the suit, and was to the effect that during that time there were disputes between himself and the officers of Hale county relative to the territory which was within the jurisdiction of the respective counties. But he expressly said further that he did not know the location of the Millington line, and that the same was never pointed out to him. Further testimony of Judge Brown is also pointed out, to the effect that while the witness was county judge of Lubbock county the location of the boundary between the two counties was not involved in any action by the commissioners' court of Lubbock county in the establishment of public roads or justice or "commissioners' road precincts."

Such testimony at best was of a negative character only, and in our opinion in no manner conflicts with the facts found by us as shown in our original opinion. Nor do we think that the fact that in the state abstract records there was some confusion with respect to whether or not certain surveys were in one county or the other tend in any material respect to show that the Millington line was not recognized by the commissioner of the general land office as the true boundary line between the two counties; since it is evident that such confusion is referable to the correct location of those surveys and not to the location of the Millington line, which was of record in the land office and was definite and specific.

[5] Appellee earnestly insists, in effect, that as appellant did not move to set aside

the findings of the jury upon special issues before judgment was entered thereon, it waived the right to complain that those findings were not supported by the evidence; reference being made specially to the finding by the jury in answer to special issue No. 3, to the effect, that prior to the enactment of article 1400 of the Revised Statutes the Ira Millington line was not recognized by the officers of the two counties as the true boundary between those counties. In support of that contention the following decisions are cited: Essex v. Mitchell, 183 S. W. 399; Blackwell v. Vaughn, 176 S. W. 912; Scott v. F. & M. Nat. Bank, 66 S. W. 485; T. & N. O. Ry. Co. v. Weems, 184 S. W. 1103; Smith v. Hessey, 134 S. W. 256. As we construe them, each and all of those decisions go no further than to hold that an assignment to the action of the court in rendering a judgment upon special findings by the jury because such findings are not supported by the evidence cannot be sustained, by reason of the fact that by article 1990, Vernon's Sayles' Texas Civil Statutes, such findings cannot be disregarded, but must constitute the only basis upon which any proper judgment can be rendered, even though the findings upon which the judgment is based are not supported by the evidence, as announced in Ablowich v. Greenville Nat. Bank, 95 Tex. 429, 67 S. W. 79, 881, and Waller v. Liles, 96 Tex. 21, 70 S. W. 17. Article 1990 implies the authority of the trial court to set aside such findings before any judgment is rendered thereon and is to the effect that the court must render a judgment upon those findings unless the same are set aside, but we know of no decision to the effect that the losing party cannot, in his motion for new trial after judgment is rendered, attack such special findings of the jury for lack of evidence to support them. In the decisions cited by the appellee it appears that no attack was made upon the findings of the jury as being unsupported by the evidence, but the attack was upon the judgment rendered upon the findings for lack of evidence to support such findings.

Article 1990 denies authority in the trial court to render a judgment non obstante veredicto. In that sense and to that extent only does the statute make the findings of the jury upon special issues conclusive upon the court. In the same sense article 1986, which is also invoked by appellee, makes such findings conclusive upon the parties; but not more so than is a general verdict which by article 1994 is required to be made the basis of the judgment. To give to article 1986 a strict literal construction would be to deny the parties the right to attack the verdict at any time or upon any grounds.

By article 1612 it is provided that whenever a motion for new trial is filed the errors therein assigned shall constitute the assignments of error on appeal. Rule 24 for Courts of Civil Appeals (142 S. W. xii) provides that assignments of error not distinctly set forth in the motion for new trial in the trial court shall be considered waived. Rule 71a for district and county courts (145 S. W. vii) provides that a motion for a new trial shall be filed in all cases where parties desire to appeal or prosecute a writ of error from a judgment rendered in those courts, except when an error complained of is fundamental, and except in such cases as the statutes do not require such a motion. By article 2023 the losing party is allowed two days after rendition of a judgment within which to file a motion for a new trial. In view of those statutes and rules, it seems clear to us that, in his motion for new trial after judgment rendered, a losing party has the same right to attack the special findings by a jury upon which the judgment is rendered, as he has to attack a general verdict, and upon appeal to complain of the action of the trial court in overruling said attack.

The record in the present suit shows that after the conclusion of the evidence and argument, and before the special issues were submitted to the jury, appellant requested a peremptory instruction directing a verdict in its favor, which was refused, and to which refusal appellant duly excepted. The record further shows that after the rendition of the judgment appellant, in its motion to set aside the judgment and grant a new trial, made a direct attack upon the finding of the jury in answer to special issue No. 3 upon the ground that there was no evidence to support it, and that the uncontradicted evidence was contrary thereto.

With the foregoing observations appellee's motions for further findings to certify to the Supreme Court and for rehearing are overruled.