## LYNN COUNTY et al. v. GARZA COUNTY et al.

### No. 1626—6136.

Commission of Appeals of Texas, Section A.
March 15, 1933.

Vickers & Campbell and Lockhart, Garrard & Brown, all of Lubbock, for plaintiffs in error.

Bean & Klett, of Lubbock, N. C. Outlaw, of Post, George Neill and W. W. Price, both of Brownfield, Loyd R. Kennedy and J. L. Winder, both of Morton, Carl E. Ratliff, of Levelland, and Green Harrison, of Crosbyton, for defendants in error.

SHARP, Judge.

This suit was originally filed to determine the common boundary line between Lynn and Garza counties. Because of the effect of the establishment of such line upon other interested counties, the counties of Lubbock, Yoakum, Cochran, Crosby, Hockley, Terry, and Kent became parties. The cause was tried before the court without a jury. The judge filed findings of fact and conclusions of law, and based upon these findings the boundary line between the various counties was determined. From the judgment of the trial court, an appeal was taken to the Court of Civil Appeals at Eastland, and that court reversed and remanded the judgment of the trial court, with instructions. 42 S.W.(2d) 627. The Supreme Court having jurisdiction of this cause by virtue of article 1821, Revised Civil Statutes, as amended in 1929 by the 41st Legislature, chapter 33, section 1 (Vernon's Ann. Civ. St. art. 1821), granted a writ of error to review the opinion of the Court of Civil Appeals.

The pertinent and controlling parts of the findings of fact and conclusions of law made by the trial court read as follows:

#### "Findings of Fact

"1. I find that the Counties of Throckmorton, Haskell, Stonewall, Kent, Garza, Lynn and Terry, by the Acts creating them, were each made thirty miles square; that the North lines of each of said Counties were, by the Acts creating them, made thirty miles long.

"2. That in said tier of Counties, Kent, Garza, Lynn and Terry, and in addition to those named, Yoakum, are the Counties in the said tier, that are parties to this suit.

"3. That the beginning corner for the North line of said tier of Counties is the North-west corner of Young County.

"4. That the North-west corner of Young County is well established and located on the ground, and was definitely located by the proof in this case.

"5. That the South boundary line, as well as the other boundary lines of Lubbock County, were established, located and marked on the ground, by one J. B. Jones, in 1892; that the Jones South-east corner of Lubbock County is an easily recognized corner on the ground; that the said South boundary line of Lubbock County, as established by J. B. Jones in 1892, is thirty miles long.

"6. That from the North-west corner of Young County to the J. B. Jones South-east corner of Lubbock County, is more than one hundred and fifty miles.

"7. That the Surveyor appointed by the Court to locate the various boundary lines of the counties involved in this suit, found the South boundary line of Lubbock County to be further South than the said South Boundary Line located by J. B. Jones in 1892.

"8. That Lubbock County is not asking that their South boundary line be moved any further south than the Jones South boundary line of said County.

"9. That Lubbock County and Crosby County have, for many years, recognized the East boundary line of Lubbock County, as established by J. B. Jones in 1892, as the dividing line between said Lubbock County and Crosby County.

"10. That Stonewall, Haskell and Throckmorton Counties are not parties to this suit.

"11. That by beginning at the J. B. Jones South-east corner of Lubbock County, and running East thirty miles for the North-east

Corner of Garza County, and from the Northeast Corner of Garza County thirty miles east to the North-east Corner of Kent County, there is still left between the North-east Corner of Kent County, and the North-west Corner of Young County, more than ninety miles for the North boundary lines of Stonewall, Throckmorton and Haskell Counties.

"12. I find that the South boundary lines of Baylor, Lamb, Terry, Floyd and Motley Counties, is a well established line upon the ground, and has been for many years recognized as an established line. * * *

## "Conclusions of Law

"From the above Findings of Fact, I conclude as a matter of law, that the common corner of Lubbock, Crosby, Garza and Lynn Counties, should be established as the J. B. Jones South-east Corner of Lubbock County, and that the common corner of Garza, Kent, Dickens and Crosby Counties, should be established thirty miles eastward from said J. B. Jones South-east Corner of Lubbock County; that the common corner of Kent, Stonewall, King and Dickens Counties should be located thirty miles eastward from the common corner of Dickens, Crosby, Garza and Kent Counties, and I conclude that the common corner of Lubbock, Lynn, Terry and Hockley Counties should be located at the J. B. Jones South-west Corner of Lubbock County, and that the common corner of Terry, Hockley, Cochran and Yoakum Counties, should be located at a point thirty miles westward from the J. B. Jones South-west Corner of Lubbock County, and that the South-west Corner of Cochran County, and the North-west Corner of Yoakum County, should be located on the Texas-New Mexico boundary line, at the point where a line extended westward from the common corner of Cochran, Hockley, Terry and Yoakum Counties, crosses said boundary line of Texas and New Mexico."

The trial court entered judgment in accordance with the above findings of fact and conclusions of law.

The Court of Civil Appeals disagreed with the judgment of the trial court and held that the trial court should have decreed that:

" * * * The N.W. corner of Garza county, being also the S.E. corner of Lynn county, should be located at the point of intersection of the parallel of latitude passing through the N.W. corner of Young county, and the meridian passing through the N.W. corner of Floyd county. The N.W. corner of Floyd county should, we think, be located for the purpose of determining the meridian by running the agreed courses and distances from the Statutory N.W. corner of Young county rather than from Swindell's N.W. corner. * * * Under this view the N.W. corner of Garza county and the S.E. corner of Lynn county should be located 758.4 varas south

and 846.3 varas west of the J. B. Jones S.E. corner of Lubbock county, as marked upon the ground; the said point being also 956.3 varas south and 101.6 varas east of the concrete monument.

" * * * The judgment of the trial court should have decreed the common corner of Garza, Lynn, Lubbock, and Crosby counties to be as hereinbefore stated; that consistently therewith it should have directed the location of the S.E. corner of Crosby, the N.E. corner of Garza, and the N.W. corner of Kent counties at the point where the parallel of latitude passing through the N.W. corner of Garza is intersected by the meridian of longitude passing through the Statutory N.E. corner of Floyd county. The S.W. corner of Lubbock, the N.W. corner of Lynn, the N.E. corner of Terry, and the S.W. corner of Hockley counties should be located at the point where the meridian passing through the Statutory N.W. corner of Hale county intersects said parallel of latitude, and that the N.W. corner of Terry, the N.E. corner of Yoakum, the S.E. corner of Cochran, and S.W. corner of Hockley counties should be located at the point of intersection of the meridian passing through the Statutory N.W. corner of Lamb county and said parallel of latitude; that the east and west lines of said counties should be located along meridians passing through said corners as located. Since it may be advisable to provide by final judgment for the location of said lines on the ground, the judgment will be reversed and remanded with directions to the trial court to adjudge the location of the boundaries involved in accordance herewith and, if deemed advisable, have an actual survey made and incorporate the result thereof in the final judgment."

It is contended that, the trial court having found "that Lubbock county and Crosby county have, for many years, recognized the east boundary line of Lubbock county, as established by J. B. Jones in 1892, as the dividing line between said Lubbock county and Crosby county," which finding is unchallenged, the honorable Court of Civil Appeals erred in adjudging that the common boundary line between Lubbock and Crosby counties should be fixed along the meridian of longitude extending south from the northwest corner of Floyd county, and that the southeast corner of Lubbock county and the southwest corner of Crosby county should be fixed on the ground at the point where the meridian of longitude extended south through the northwest corner of Floyd county intersects the parallel of latitude extended west through the northwest corner of Young county, since the line between Lubbock and Crosby counties so fixed by the Court of Civil Appeals would ignore the fact that Lubbock and Crosby counties had recognized the line established by J. B. Jones in 1892 as the dividing line between those two counties.

In 1856 the Legislature created Young county, defining its boundaries (Acts of 1856, 4 Gammel's Laws, pp. 252, 459). Section 1 of article 9 of the Constitution of this state provides that in creating new counties "no new counties shall be created with a less area than nine hundred square miles, in a square form, unless prevented by pre-existing boundary lines." In 1876 the Legislature created certain counties out of Young and Bexar territories, including those involved in this suit, and defined their boundaries, which fixed the location of the northwest corner of Floyd county at a point which can be definitely located with reference to the northwest corner of Young county. Acts of 1876, 8 Gammel's Laws, p. 1070. Thus it will be seen that the northwest corner of Young county is well established and located on the ground. The counties created under that act, lying to the west of Young county, except those touching New Mexico, were to include not less than 900 square miles. At that time this great stretch of public domain was unsurveyed and unsettled, and it was inevitable that there would be irregularities in the establishment of boundary lines between the counties created. As early as 1892 the boundary line between Lubbock and Crosby counties was settled by agreement. That line has been respected, not only by the counties involved, but also by the commissioner of the general land office of this state.

■ The rule is well settled that counties may settle their boundary disputes, and, where the line is established "in accordance with the law," their acts will be approved. In fact, it is the public policy of this state to look with favor upon peaceable boundary agreements between interested counties. It has long been the policy of this state, as reflected in our statutes, to recognize established boundaries agreed upon between counties. Article 1606, R. C. S. 1925, which was first enacted substantially in this form in 1895, reads as follows: "The county boundaries of the counties in this State as now recognized and established are adopted as the true boundaries of such counties, and the acts creating such counties and defining the boundaries are continued in force." Article 1591, R. S. 1925, provides for suit, if necessary, to establish boundary lines between counties. The Legislature has not only recognized the binding agreements made by counties in accordance with the law fixing their boundary lines, but has also provided in case of a dispute for a settlement of this question.

■ The foregoing articles of the statute have been repeatedly construed and sustained by the courts of this state. The rule is now well settled that, in case of a disputed boundary line between two or more counties where the line had been established and recognized by the counties interested, and by the commissioner of the general land office of Texas, the law requires that same shall be declared the true line, though not mathematically correct, provided no provision of the Constitution is violated. Stephens County v. Palo Pinto County (Tex. Civ. App.) 155 S. W. 1006; Hale County v. Lubbock County (Tex. Civ. App.) 194 S. W. 678; Pecos County v. Brewster County (Tex. Civ. App.) 250 S. W. 310; Hunt County v. Rains County, 116 Tex. 277, 288 S. W. 805; Hunt County v. Rains County (Tex. Civ. App.) 7 S.W.(2d) 648; Travis County v. Williamson County (Tex. Civ. App.) 4 S.W.(2d) 610.

It will be observed that the Legislature, in creating these counties under the Act of 1876 and defining their boundaries, fixed the northwest corner of Floyd county at a point which can be definitely located with reference to the northwest corner of Young county. The counties created under that act have functioned for many years. The trial court used and recognized the statutory northwest corner of Young county for the beginning corner of the north line of Throckmorton, Haskell, Stonewall, Kent, Garza, Lynn, Terry, and Yoakum counties. The court also found that the south boundaries of Baylor, Lamb, Terry, Floyd, and Motley counties is a well established line upon the ground, and has been for many years recognized as an established line. The court also recognized the Jones line established in 1892 as the true line between Lubbock and Crosby counties, and concluded that the common corner of Lubbock, Crosby, Garza, and Lynn counties should be established on the Jones southeast corner of Lubbock county. Lubbock county is not asking that its south boundary line be moved any further south than the Jones south boundary line of that county, as it would be authorized to do under the opinion of the Court of Civil Appeals. The trial judge used, in connection with other testimony, the above well-established facts as a basis for the judgment rendered. Each county involved will receive the amount of land required by the Constitution.

The testimony introduced is very voluminous. The trial court had under consideration much evidence touching the boundary lines of many counties not involved here and rendered the judgment above indicated. We have carefully read the record and think that the judgment of the trial court is fully sustained by the testimony.

We recommend that the judgment of the Court of Civil Appeals be reversed, and that the judgment of the trial court be in all respects affirmed.

CURETON, Chief Justice.

Judgment of the Court of Civil Appeals reversed, and that of the district court affirmed.