**HUTCHINSON COUNTY v. CARSON COUNTY.**

No. 4403.

Court of Civil Appeals of Texas. Amarillo.

April 15, 1935.

Rehearing Denied June 10, 1935.

Lackey & Lackey, of Stinnett, and Williams & Bell, of Childress, for appellant.

Frank Murray, of Panhandle, and Underwood, Johnson, Dooley & Huff, of Amarillo, for appellee.

MARTIN, Justice.

Hutchinson county brought suit against Carson county, alleging that a dispute had long existed between the two over the location of the boundary line between them, same being the south boundary line of the former and north boundary line of the latter. It alleged and described the true location of such boundary line, and asked in the alternative if it be mistaken in such, that the court appoint a surveyor to locate, establish, and mark such boundary line, and for judgment declaring same to be the true line.

Appellee denied that any dispute had existed as alleged by appellant and specially pleaded that in 1901 J. L. Gray, a competent surveyor had, under employment of Carson county, run and definitely marked and established a boundary line between the two counties, which line had since said date been recognized by said counties, the inhabitants of each and the land commissioner of Texas.

The trial was to the court, who specifically found: " * * * That the true and correct North boundary line of Carson County and the South boundary line of Hutchinson County, Texas, in controversy herein is the line as surveyed, established and marked by J. L. Gray, Surveyor, in 1901, as said line is more fully described by report of the survey and as hereinafter set out. The Court further finds that said line was properly established and marked on the ground, and that said line as so established and marked on the ground has been recognized by both said Carson and Hutchinson counties, at all times since the same was established and marked on the ground by the said J. L. Gray in 1901."

Judgment was entered for appellee, and establishing the Gray line, after particularly describing same, as the true and correct boundary line between the aforesaid counties.

In the interest of brevity, we do not discuss or decide the question of the mathematical correctness of the Gray line further than to say that it approximates the location a line would take constructed course and distance according to the statutory field notes of said counties, from the northeast corner of the state of Texas. It is not contended that the judgment rendered herein left either county a form or area in contravention to the terms of article 9, § 1, of the State Constitution.

In view of the trial court's finding of the establishment and recognition of the Gray line, we go no further than to decide whether or not the evidence was sufficient to raise an issue as to such matter. By the terms of article 1606, R. C. S. 1925, the above finding constitutes a complete defense to appellant's cause of action if supported by the evidence—unless, of course, there is involved in such result some violation of our State Constitution. None such appears from this record.

The evidence for appellee upon the question at issue is in substance as follows: In 1898 W. D. Twichell ran a line from the northeast corner of Texas west approximately 90 and south approximately 60 miles, and established and marked the westerly common corners of Hutchinson and Carson counties, being the southwest corner of the former and northwest corner of the latter. This is known in the record as the "zinc cone corner." Thereafter, Twichell decided that his north-south run contained an excess, and apportioned same, which placed the above corner some 542 varas south of the "zinc cone corner." This point was never marked, and was never accepted as correct by the land commissioner. Thereafter, in 1901, J. L. Gray was employed by Carson county to run out and determine its correct boundaries. In pursuance of his employment, Gray went to the "zinc cone corner," then plainly marked, and ran east for the common boundary line between the said counties, marking each mile with iron pipes set in the ground, stamping on the face of each a number corresponding with and indicating the distance in miles each was located from said corner, with the letter C on the south face of each and the letter H on the north face. These were set for a distance of more than 30 miles eastward from said corner and have remained as originally located until the trial of this case, with the possible exception

of two. It was testified, without objection apparently, by Elston, the county judge of Carson county, and a long-time resident thereof, that such line was thereafter continuously recognized by both counties and by the land commissioner up to about the time appellant filed suit; that taxes were assessed up to such line by both counties; and that he never heard of Hutchinson county questioning same throughout said time. It further appears that the country is very sparsely settled along this line, but that some two or three voters living adjacent thereto recognized the Gray line as the boundary between the two counties; that in building a paved road north–south across the Gray line, Hutchinson county paid for paving up to said line and Carson did likewise; that a county line highway sign placed by the highway department stood at said "zinc cone corner." A sharp issue was made as to recognition, particularly by the introduction of certain commissioners' court orders of Carson county, which show on their face a dispute over the line. Elston explains these as a dispute among the surveyors rather than the counties and testifies that during and after this time the Gray line continued to be recognized. It uncontradictedly appears that there was a sharp dispute between the counties as to the respective acreage belonging in each county of surveys lying across the Gray line. In 1931 surveyor Browning was employed by Carson county to determine the acreage in these surveys taxable in each county. He did so, and his work was accepted by the land commissioner and state abstract books corrected accordingly. This last matter obviously could not be determinative of the question at issue. The lines of private surveys lying across a fixed county boundary might shift, or be incorrectly computed, and thus furnish a basis for a dispute, without in any way involving the location and recognition of such boundary line.

We are of the opinion that the evidence of the marking and establishment of the Gray line is conclusive. As to its recognition, the evidence, in our opinion, sufficiently but meagerly perhaps, raised the issue. We feel sure that the trial court would not have been justified in refusing to submit such issue, if this had been a jury trial.

What is now article 1606 appeared first in the Revised Statutes of 1895. It was intended to afford some measure of protection to the counties and their inhabitants, from boundary line controversies, engendered ofttimes by the vagaries and evanescent reasoning of technical surveyors. It has received frequent interpretation and construction in consonance with its wholesome purpose. See Stephens County v. Palo Pinto County (Tex. Civ. App.) 155 S. W. 1006; Hunt County v. Rains County (Tex. Civ. App.) 7 S.W.(2d) 648; Hale County v. Lubbock County (Tex. Civ. App.) 194 S. W. 678; Pecos County v. Brewster County (Tex. Civ. App.) 250 S. W. 310; Travis County v. Williamson County (Tex. Civ. App.) 4 S.W.(2d) 610; Lynn County v. Garza County (Tex. Com. App.) 58 S.W.(2d) 24.

These authorities furnish precedents for our conclusion, and we can add nothing to their reasoning.

The judgment is affirmed.