## GAINES COUNTY v. TERRY COUNTY et al.

No. 4091.

Court of Civil Appeals of Texas. El Paso.

May 15, 1941.

Rehearing Denied June 5, 1941.

Alton T. Freeman, Co. Atty., of Seminole, W. A. Griffis, Jr., of Seagraves, Bradley & Wilson, of Lubbock, and Pat Beene, of Andrews, for appellant Gaines County.

Nelson & Brown and George W. McCleskey, all of Lubbock, for appellee Yoakum County.

Burton G. Hackney and Joe J. McGowan, both of Brownfield, and E. L. Klett, of Lubbock, for appellee Terry County.

SUTTON, Justice.

This is an appeal from the district court of Andrews County. The parties will be designated as in the trial court.

Gaines County, as plaintiff, sued Yoakum and Terry Counties, as defendants, to have judicially established, located, marked and identified on the ground the common boundary between the plaintiff and the defendants. The north line of Gaines is the south line of Yoakum and likewise corresponds to the greater part of the south line of Terry.

The plaintiff alleged its creation; that of the defendants, and many other Plains Counties by an Act of the Legislature dated August 21, 1876. Its petition set out the boundaries as defined by the Legislature for each of the three counties, as follows:

"The County of Terry: Beginning at the Northwest corner of Lynn County; thence West thirty miles; thence South thirty miles; thence East thirty miles to Southwest corner of Lynn County; thence North thirty miles to the place of beginning."

"The County of Yoakum: · Beginning at the Northwest corner of Terry County; thence West to the Southwest corner of Cochran County on the 103rd Meridian; thence South thirty miles with said Meridian; thence East to the Southwest corner of Terry County; thence North thirty miles to the place of beginning."

"The County of Gaines: Beginning at the Northwest corner of Dawson County; thence West to the Southwest corner of Yoakum County in the 103rd Meridian; thence South with said Meridian thirty miles; thence East to the Southwest corner of Dawson County; thence North thirty miles to the place of beginning."

Plaintiff further alleged, by an Act approved February 23, 1900, the Legislature authorized the area embraced in Yoakum and Terry Counties and many others to be surveyed and sectionized for the purpose of placing such lands on the market for settlement; that Col. D. S. Woods, an engineer, and assistants were employed to do such work. It is alleged further that before the commencement of their work Col. Woods found it necessary to locate and establish on the ground certain county lines in order to determine in which counties the lands surveyed were situated; that in doing so he ran the common boundary between plaintiff and defendants and marked it on the ground, including the beginning and ending points. The beginning point was thus described: "A Lime stone 3"x 20"x 20" long set in ground mkd. N.W. D. Co. on East side and N.E.G. Co. on West side, which is 6689.7 vrs. North O dg. 23' West from the N.W. cor. 117, Block 'M' E.L. & R.R. and N.E. Cor. 1, Block H. D. & W.R.R. Co., also the S.E. cor. Sur. 1, Blk. G.C. & M.R.R. and 3425.8 vrs. East with North line of Gaines Cont., from which Carney wind mill brs. N. 59 dg. 25' E., wind mill East and near Sulphur Draw about 350 vrs. North of North boundary line of Gaines County brs. N. 82 dg. 30' W. Take observation on Polaris and find true meridian at this point, magnetic variation Transit No. 1,110 dg. 29' E. Transit No. 2 10 dg. 38 East."

From this point the line continues west for approximately forty-nine miles. The field notes for which are copied in full in the petition. The termination or west end of the line is described as follows: "Thence on West from Mile 49 West, at 468 top of high ridge, 962 vrs. the N. West corner of Gaines County and S.W. corner of Yoakum County, on the 103rd Meridian, the East line of New Mexico 6638 vrs. South & 88 vrs. West from monument established by Twichell Mile 70 North from S.E. Cor. of New Mexico, a stone 3" x 12" x 18" long set in ground, base paved 2½ diameter with small stone, cor. stone Mkd. N.W. Cor. Gaines Co. on East side and N.M. on West side, from which a wind mill in N.M. brs. S. 24 dg. 45' W., West wind mill of 2 in N.M. brs. S. 24 dg. 10' W., East one brs. S. 23 dg. 35' W."

This line, called the Woods line, was marked at various places along its course by setting up various monuments, burying bottles in the ground, etc., and by giving bearings on various objects. It was not marked and identified in the manner as provided by law as found in Art. 1583, Vernon's Ann.Civ. Statutes. The petition alleged further that the field notes of the Woods line as surveyed, established and marked on the ground, were filed in the General Land Office and recognized and approved by such office in mapping said counties, abstracting of land titles and placing public lands in such counties on the market; that said Woods line was recognized in the organization of each of said counties in laying out commissioners', justice and voting precincts and school districts, for purposes of taxation, voting and exercise of civil and criminal jurisdiction by the officers and courts of said counties, and was recognized and established as the boundary line between said counties when the Revised Statutes of 1911, including Article 1400 thereof, and the Revised Statutes of 1925, including Article 1606 thereof, fixing and validating the county boundaries then recognized and established as the true boundaries of the counties in this State, were enacted; in the alternative, it was alleged that if mistaken in the allegations that the Woods line was the line recognized in the organization of said counties and when the Revised Statutes of 1911 and 1925 were enacted, then that said Woods line was only a few varas north of and was approximately

on and along the south lines of Surveys 1 to 6, inclusive, Block C-37, 1 and 2, Block C-36, 79 to 92, inclusive, Block DD, John H. Gibson and 879 to 906, inclusive, Block D, John H. Gibson Survey and for convenience of said counties, their officers and landowners, the south line of the above-mentioned surveys was recognized and established as the boundary line between said counties in their organization and when Article 1400 of the Revised Statutes in 1911 and Article 1606 of the Revised Statutes of 1925, were enacted, fixing and validating the county boundaries then recognized and established as the true boundaries of the counties in this State; that said boundary line was recognized as the true boundary line between said counties continuously from the organization of each of said counties until on or about March 7, 1935, when the county and commissioners' courts of each of said counties made and entered an order and agreement attempting to change said boundary line by mutual agreement to the south lines of the following sections: 6 and 7, Block A-6, across 34, south line 35-A, 35-B, 36-A, 36-B, 37 and 38, Block AX, Sections 28, 29 and 30, in Block C-35, Sections 19 and 20 in Block C-34, Sections 19 and 20, Block C-33, Sections 19 and 20, Block C-32, Sections 19 and 20, Block C-31, the northeast corner of Gaines County to be set in said east-west tangent in line north-south of the northwest corner of Dawson County as marked by W. R. Standefer about 1912; and employed Surveyor Harris to mark and make his returns of said line; that said Harris did survey, mark and return field notes and maps of said line and file same with the County Clerk of each of said counties, which reports were examined and approved by the County Judge of each of said counties and certified copies of said proceedings filed by said Harris in the General Land Office after which each of said counties and its officers recognized the line so agreed upon and marked by said Harris as the boundary line between said counties; that the Woods line, having been so surveyed, marked and recognized by each of said counties from its organization continuously to 1935 as the true boundary line between said counties and having been validated by Article 1400, Revised Statutes of 1911 and Article 1606 of Revised Statutes of 1925, neither the commissioners' nor the county courts of said counties, nor both said courts acting together, had any lawful authority to alter, change, fix or

establish any other or different boundary line between said counties by agreement, and that said agreement and proceedings had thereunder in 1935 to fix and establish the boundary line between said counties was void and would and did have the effect to detach from Gaines County a strip of territory across the north side thereof, one-half to two thirds of a mile in width, about forty-nine miles long and containing 15,000 to 20,000 acres of land, and attaching same to Terry and Yoakum Counties by agreement in violation of Article IX, Section 1, subd. 3, of the Constitution of this State, Vernon's Ann.St.; that due demand had been made on each of said counties for the recognition of the Woods line and the surrender of any jurisdiction claimed or exercised by defendants over territory south of said line to plaintiff, which demand had been refused and praying for appropriate judgment and establishing the true boundary line between said counties.

The order of March 7, 1935 is as follows:

"On this the 7th day of March, A.D. 1935, came on to be considered the matter of legally and permanently establishing the South Line of Yoakum County, the South line of Terry County adjacent to the North line of Gaines County and the North line of Gaines County, Texas, and it appears to the Court that said boundary line has never been defined, surveyed, marked and due returns thereof made in accordance with law, and that the County and Commissioners' Courts of Gaines County, Terry County and Yoakum County having met jointly in Brownfield, Texas, on this date and mutually agreed that the said line should be surveyed, marked and due returns made permanently establishing said line by agreement as follows:

"That the South line of Yoakum County and the North line of Gaines County, and the South line of Terry County adjacent to said North line of Gaines County shall hereafter be located along the present surveyed sections; the South lines of the following sections—6 and 7, Block A6—across 34, South line 35A, 35B, 36A, 36B, 37, and 38, Block AX, Sections 28, 29 and 30, in Block C-35, Sections 19 and 20, Block C-34, Sections 19 and 20, Block C-33, Sections 19 and 20, Block C-32, Sections 19 and 20, Block C-31, the NE corner of Gaines County to be set in said east-west tangent in line north-south of the NW corner of Dawson County as marked by W. R. Standefer,

about 1912, that all lands north of the said south line of said sections shall hereafter be assessed in Yoakum-Terry counties and lands south of said south line of said sections shall be assessed as in Gaines County.

"The Commissioners of said counties having jointly employed A. L. Harris, surveyor of Lubbock, Texas, to mark and make his returns as above set out: Wherefore this Court appoints said Harris to so mark and make his returns thereto as set out in said proposal hereto attached and made a part hereof."

Terry County was organized in 1904, Gaines in 1905, and Yoakum in 1907. The petition in great detail alleges the recognition, acceptance and adoption of the Woods line as the common boundary by the three counties after their organization and with equal care challenges the invalidity of the action and order of the Courts of the three counties.

The defendants filed answers of considerable length and consisted, among other things, of general demurrer, special exceptions raising the defense of four-year limitation; res adjudicata, based upon the judgments and orders of the courts of the three counties, and the agreement of the counties fixing the boundary followed by nearly five years' recognition and acquiescence in the Harris line as run and established under the order of March 7, 1935. The action of the court was on these exceptions, which were all sustained, and plaintiff declining to amend, the case was dismissed, from which action this appeal is prosecuted.

The plaintiff, in twelve assignments of error followed by five propositions, challenges the correctness of the Court's action. All the assignments, after all, and the propositions go to the action of the court in sustaining the general and special exceptions indicated.

As we understand it, the defendants seek to sustain the trial court's action on the grounds: (1) That counties have the power and authority under the law to fix their common boundaries by agreement, though the agreed line may differ from that defined by the Legislature; (2) that the judgments of the courts entered March 7, 1935 and June 10, 1935 are judgments of courts of competent jurisdiction upon matters arising out of ordinary county business and may not be collaterally attacked by the plaintiff in this suit; (3) that the judgments of the courts were judgments of courts of competent jurisdiction arising out of ordinary county business, and plaintiff's petition showing on its face this suit was commenced more than four years after the rendition of such judgments its cause of action is barred by the four-year statute; and (4) plaintiff having alleged more than four years' recognition and acquiescence in the Harris line and after many individual and property rights have been fixed and dependent upon such agreed boundary, the plaintiff is bound by and estopped to deny the boundary thus agreed upon. The defendants also further contend, as we understand them, that the Woods line cannot constitute the common boundary, because it was never established, located, marked and identified on the ground in the manner required by Art. 1583, Vernon's Annotated Civil Statutes.

■■ Article 9 of the Constitution, subject to the restrictions therein contained, confers upon the Legislature the power to create counties for the convenience of the people. The power conferred carries with it necessarily the power and authority to define the boundaries of such counties. County courts and commissioners' courts are created by the Constitution and have only such power and jurisdiction as is conferred by the Constitution and laws of the State. We find no provision of law conferring upon such courts the authority to establish county boundaries by agreement or otherwise. That power rests exclusively in the Legislature. It is expressly conferred upon the Legislature and is withheld from county and commissioners' courts. If it were otherwise there would be no security along county lines. Untold confusion and injury would result—county boundaries would be subject to change as frequently as courts changed their minds.

■■ Under the statutes, Title 33, Chapter 4, Art. 1582, Vernon's Annotated Civil Statutes, at any time the county court may be satisfied the county boundary or any part thereof is not sufficiently definite and well defined, it may cause the same to be ascertained, marked and established on the ground in the manner therein provided. This article specifically provides the surveyor engaged to do such work "shall in all things conform to the law defining the boundaries of said county." This means nothing more nor less than that he shall go on the ground and locate, mark and establish the boundaries defined

by the Legislature in the act creating the county, or as validated by it, if such has been done. The counties, plaintiff and defendants herein, under the provisions of Art. 1582, supra, had the authority to determine whether or not the common boundary between them was sufficiently definite and well defined, and if not so then to engage a practical surveyor to go on the ground and locate, mark and establish the boundary as defined in the Act of August 21, 1876, or as validated, if such had been done, but not some other line. Plaintiff alleges the three courts met and agreed that the line defined by the courts in their order of March 7, 1935, hereinbefore copied, should constitute the boundary between them and directed Harris, the engineer, to locate, mark and establish on the ground that line as agreed upon, which is not the line defined by law. That is the clear import of the order. That, they were not authorized to do. They were acting without authority and the order is without force and effect and is void. Wise County v. Montague County, 21 Tex.Civ.App. 444, 52 S.W. 615; Travis County v. Williamson County, Tex.Civ.App., 4 S.W.2d 610.

Plaintiff in the first count of its petition alleged the survey, marking and location on the ground of the Woods line in 1900; the adoption and recognition of it by the counties after their organization in 1904, 1905 and 1907, and the validation of it under Art. 1400, adopted in the 1911 revision and the same article adopted in the 1925 revision as Art. 1606. The substance of that count has heretofore been stated and need not be repeated here. It states a sufficient cause of action as against the general demurrer and it was error to sustain the demurrer.

We understand one of the contentions of the defendants to be that the Woods line never was and could not be an adopted and recognized boundary such as might be validated under the validating acts, supra, because the same was not marked and identified on the ground as provided by Art. 1583, R.S.1925, or otherwise sufficiently marked and established. We do not agree with this contention. The Woods line was a straight line and its beginning and ending points were well marked on the ground. The course of it across the country was otherwise marked at various points. The substance of plaintiff's allegations are that it was marked, identified and established on the ground and adopted and recognized by the counties at all times subsequent to their organization until 1935. There was certainly some boundary recognized for tax and political purposes prior to the establishment of the Harris line in 1935. We think the Woods field notes demonstrate markings sufficiently fresh and apparent on the ground to identify it at the dates the counties were organized and at least for some years thereafter. Such a line should not be difficult to follow at any time from the one marked end to the other.

If the plaintiff can sustain by proof the allegations of its petition contained in the first count, then the Woods line was validated by the validating acts, Arts. 1400 and 1606, supra, and became the fixed and permanent boundary of these counties. A county boundary line once established on the ground and recognized by the interested counties and the Commissioner of the General Land Office, though differing from that defined by the act creating such counties, may be validated, and when once done the same becomes the permanent and fixed boundary and may not be subsequently changed. Hale County v. Lubbock County, Tex.Civ.App., 194 S.W. 678; Hutchinson County v. Carson County, Tex.Civ.App., 83 S.W.2d 699, and the cases cited. As said by Judge Stayton in Jones v. Powers, 65 Tex. 207, it is more important that county lines be certain and well defined than that they be absolutely correct. It is the policy of the law to give effect to recognized and adopted county boundaries arrived at by peaceable process, if the same may be done in accordance with the provisions of the statutes and the Constitution. The acquiescence and action of the counties standing alone is not sufficient. As already observed, counties cannot by their agreement and action establish a boundary. It requires an act of the Legislature to make effective their acquiescence and action. It is the Legislative action that constitutes the recognized and accepted boundary the fixed and true boundary between counties. This we understand to be the holding of Judge Sharp in Lynn County v. Garza County, Tex.Com.App., 58 S.W.2d 24, and the holding in the other cases there cited. If a line has been established, recognized and adopted by the interested counties, it is the policy of the law to validate it and constitute it the true boundary, if it may be done without violating some provision of the

Constitution such as the first section of Art. 9, which requires that each county have an area of not less than nine hundred square miles.

If the plaintiff should fail in its proof under its first count, then it would from necessity be relegated to the second count. What we have said with respect to the first count applies to the second. If it should fail in the second count, or if neither count can be given effect under the validating acts, then the true boundary must be ascertained under the third count, and in conformity with the procedure and provisions found in Art. 1591, supra.

From what has been said it follows that we have reached the conclusion that the trial court is in error, and that the judgment must be reversed and the cause remanded for a trial on the merits. It is so ordered.