**PECOS COUNTY v. BREWSTER COUNTY.**
**(No. 1379.)***

(Court of Civil Appeals of Texas. El Paso. March 8, 1923. Rehearing Denied April 5, 1923.)

**1. Counties ⚷8—District courts have jurisdiction of county boundary disputes.**

Rev. St. arts. 1385, 1386, confer upon district courts jurisdiction to hear and determine county boundary disputes and suits relative thereto.

**2. Counties ⚷8—Unnecessary to show failure to agree on boundary before district court jurisdiction in suit relating thereto attaches.**

It is not necessary that an attempt to fix boundary lines shall have first been made and a failure to agree shown before the jurisdiction of the district courts of suits relating thereto attaches, under Rev. St. arts. 1375–1384.

**3. Counties ⚷8—Improper for court to undertake to change established and definitely marked boundary.**

Under Rev. St. art. 1400, providing that the county boundaries as recognized and established are adopted as true boundaries, and the acts creating such counties and defining the boundaries are continued in force, it is improper for the district court to undertake to change an established and definitely marked boundary line between counties theretofore recognized and established as the true line, and this is true though the line has been incorrectly run.

**4. Counties ⚷8—Where surveyed boundary has become indefinite and undefined, court may order resurvey.**

Where a surveyed boundary line has become indefinite and undefined, the district court may direct a resurvey and re-establishment thereof.

**5. Counties ⚷8—Discrepancy in course and distance of resurvey of county boundary held insufficient to warrant finding that original survey not followed.**

Where a resurvey of a county boundary line, which was indefinite and undefined, was ordered, the fact that the resurvey varied in course and distance was not sufficient to warrant the finding that the resurvey did not follow the former survey.

Appeal from District Court, Reeves County; Chas. Gibbs, Judge.

Suit by Pecos County against Brewster County. From a judgment for defendant, plaintiff appeals. Affirmed.

John B. Howard, of Pecos, and W. A. Hadden and Howell Johnson, both of Ft. Stockton, for appellant.

A. M. Turney, W. Van Sickle, and Martin & Perkins, all of Alpine, for appellee.

HIGGINS, J. This is a boundary dispute between Pecos and Brewster counties.

Pecos county was created by the act of May 3, 1871 (Acts 12th Leg. c. 70), its boundaries being described:

"Beginning at a point on the Rio Grande where the river San Francisco empties into the Rio Grande; thence in a northwesterly direction to Varilla Springs; thence," etc.

Presidio county was created May 12, 1871 (Acts 12th Leg. c. 86), its boundaries being described:

"Beginning * * * thence southeast to Varilla Springs; thence in a southeasterly direction to the mouth of the San Francisco river, where it empties into the Rio Grande; thence," etc.

In 1887 Brewster, Buchel, and Foley counties were created out of the eastern portion of Presidio county. Acts 20th Leg. cc. 4 and 38. Subsequently Buchel and Foley counties were abolished and the territory comprising same incorporated in Brewster county. Acts 25th Legislature, c. 90.

This suit was begun by Pecos county, the material allegations of its petition briefly stated being as follows: That in 1879 under the law then in force Pecos and Presidio counties agreed to have the boundary line between them fixed, marked, and established, and the commissioners' court of Presidio county appointed Thos. C. Nelson surveyor, who ran out and established the line, and since that time Pecos county has exercised jurisdiction over all property shown by said survey to be in that county; that in 1918 the commissioner of the general land office, without lawful authority, abstracted certain lands to Brewster county which were in Pecos county since its organization and the survey made in 1879, and that Brewster county was now claiming jurisdiction over said land without lawful right and was threatening to assess and collect taxes thereon; that the boundary line as established in 1879 had been shown upon the official maps since 1880, and had been recognized by both counties as the true line since 1880, which map was attached and made a part of the petition. The tax collector of Brewster county was made a party defendant. It was prayed that such collector be temporarily enjoined from collecting taxes upon said land, and upon final hearing the injunction be perpetuated, and that plaintiff "have judgment forever quieting the title to said boundary line as established and recognized by said Pecos, Presidio, and Brewster counties, as shown on the map attached hereto marked Exhibit C."

Attached to and made a part of the petition is certified copy of an order of the commissioners' court of Pecos county made in 1879 appointing Thos. C. Nelson surveyor to ascertain the boundary line between Pecos and Presidio counties from the mouth of Del-

⚷For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error dismissed for want of jurisdiction May 23, 1923.

aware creek where it empties into the Pecos river to the mouth of San Francisco river where it empties into the Rio Grande, and directing the surveyor to place stone monuments at the initial and ending points and at every mile upon the line.

Attached to the petition appear copies of other orders of the commissioners' court of Pecos county as follows: An order in 1886 establishing and describing commissioners' and justice precincts; in 1899 redistricting the county into new justice and election precincts and describing same; in 1899 order establishing the boundaries of school district 5 and describing the surveys comprising same.

Attached to the petition is a certified copy of Nelson's report as follows:

"State of Texas, County of Pecos.

"Survey of County Line.

"Field Notes of Survey of County Line Between Pecos, Presidio, and El Paso Counties.

"Beginning at a stone monument 3 ft. high marked BCP & PR Co., on top a high bluff, the W. bank of San Francisco creek at its junction with the Rio Grande, latitude 29 degrees 32′ 48″, longitude 102 degrees 20′ 08″, brs. S. degrees 50′ E. 75 miles 988 vrs. from the SE Cor. of Sur. No. 150 in name of J. Richards.

"Thence N. 48 degrees 25′ W. along said Co. line (1,250 vrs. cross to E. bank of San Francisco Cr.) 1 mile to a stone mound 2 ft. high marked 1 m. S. F. 2 miles to a stone md. 2 ft. high mkd. * * * [Here follow the intermediate calls, all on a course of N. 48° 25′ W.] 93 miles and 437 varas to a stone md, 4 ft. high mkd. B. P. E. Co., one side, and P. R. Co. on the other side, at the head of Barella Springs in latitude 30 degrees 47′ 16″, longitude 103 degrees 30′ 02″."

The remainder of the field notes cover Barella Springs to the mouth of Delaware creek and are irrelevant to the present controversy. The report concludes:

"I, Thos. C. Nelson, surveyor appointed to survey county line between Pecos county, Presidio county, and El Paso county, do hereby certify that the foregoing survey was made according to law, and that the lines and corners artificial and natural are truly described in the foregoing plat and field notes."

Brewster county answered by exceptions, general denial, and special plea setting up that the boundary line between the counties was tied to two natural objects, to wit, the mouth of San Francisco creek where it empties into the Rio Grande, which point is stationary, enduring, and is on the ground, whence it runs straight in a northwesterly direction to Barella (Varilla) Springs, which springs are permanent, natural, and lasting objects on the ground, and a straight line between said points is the line between the parties; that it was true that Thos. C. Nelson had made a report to the commissioners' court of Pecos county stating that he had run said line between said points, and the line Nelson said he ran was the true boundary line, and defendant admitted that said Nelson line was the true boundary line, but denied that he marked the same, and alleged that he did not build or erect any monuments thereon, and that the boundary line between the two counties was an unmarked line, but could be identified; that the line had never been marked and surveyed on the ground by any person, and could not be identified on the ground; and that it was important that it be surveyed, marked, described, and monuments erected, and that the defendant had never acquiesced in any unmarked, unsurveyed, or undescribed line.

The answer prayed the court to appoint a surveyor to survey the line, beginning at the point where San Francisco creek empties into the Rio Grande, and thence in a northwesterly direction to Barella Springs, and to mark the same with rock monuments every three miles, and at the intersection of each section, and at the intersection of the G., H. & S. A. and Orient Railway tracks, and that the boundary line be thus established.

On May 25, 1920, the court, after hearing, entered its order finding that the line was not a definite and marked line, and that it was necessary to have the same surveyed and marked on the ground, and for this purpose appointed Robert E. Estes, a state surveyor, to survey the same in accordance with the report of Thos. C. Nelson, beginning at the mouth of San Francisco creek where it empties into the Rio Grande, and run in a northwesterly direction on a direct straight line to Barella Springs, and to mark the same with monuments at the end of each mile, and to mark the initial corners, and provided that the said surveyor should give proper notice to the county judges of Pecos and Brewster counties. At the December term, 1921, the cause came on for final hearing, and was submitted to the court without a jury, whereupon the court considered the report made by the surveyor Estes and found that it had been made in accordance with the previous order of the court, and it was thereupon decreed that the line between the two counties was established according to the survey made by Estes, as follows:

"Beginning at a stone monument 3 feet high, on high bluff 550 feet above the bed of the Rio Grande, and on the west side of the mouth of San Francisco creek where it empties into the Rio Grande, on the border between the United States and Mexico."

Then follows the intermediate calls to Barella Springs, same being on a course north 50° 47′ west, describing the monuments erected along the line and identifying the location of such monuments by natural objects.

The decree also approved that portion of the surveyor's supplemental report made in accordance with the previous order of the court showing the acreage in the respective

counties of each of the surveys crossed by the line, and the acreage so shown was established as the correct acreage in each county. The court further ordered that certified copies of the judgment and the field notes of the Estes survey be furnished to the commissioners' courts of Pecos and Brewster counties and to the commissioner of the general land office, and taxed the costs equally between the plaintiff and the defendant. From this judgment Pecos county appeals.

[1] Appellant insists that under the act of April 22, 1879, appearing in the Revised Statutes as articles 1375 to 1384, the district court was without jurisdiction to entertain the issues herein and render the judgment which was rendered, citing in support of this position Guadalupe County v. Wilson County, 58 Tex. 228, and Jones v. Powers, 65 Tex. 212. But this contention is without merit in view of the act of 1897, appearing in the Revised Statutes as articles 1385 and 1386. This latter act amended the law of 1879 by adding thereto the following:

"Notwithstanding the preceding articles of this chapter, any county in this state may bring suit against any adjoining county or counties, for the purpose of establishing the boundary line between them. Such suit shall be brought in the district court of the county in an adjoining judicial district whose boundaries are not affected by the suit, and whose county seat is nearest the county seat of the county suing. And said court shall try said cause as other causes, and shall have full and complete jurisdiction to determine where such boundary line is located, and, if necessary, shall order the same to be remarked and resurveyed. And if, in the trial of any such cause, it shall be found that the boundary line between the counties involved has never been established and marked, or, if marked, has become indefinite and undefined, said court shall have power to re-establish the same and order it marked. And any boundary line so established by such judgment shall thereafter be regarded as the true boundary line between the counties in question; provided, that if it shall be found in any such cause that the boundary line in question has been heretofore established under the law then in force, the same shall be declared to be the true line, and shall be resurveyed and established as such.

"Provided, further, that it shall be unlawful for the commissioner of the general land office to mark, fix or place on any of the maps in said office any contested county line at any definite point thereon, until a certified copy of the final judgment of the court, herein provided, is filed in the general land office, together with a certified copy of the field notes of the line so established by such judgment." See articles 1385, 1386, R. S.

This latter law clearly confers jurisdiction upon the district court of county boundary disputes and suits. Lampasas County v. Coryell County, 27 Tex. Civ. App. 195, 65 S. W. 67.

[2] It is also urged that the jurisdiction of the district court cannot attach unless an attempt to fix the boundary had first been made under articles 1375 to 1384, R. S., and the counties had failed to agree. But there is nothing in the act of 1897 to warrant such a view. On the contrary, it confers concurrent and original jurisdiction upon the district court in such suits.

[3] Appellant also invokes article 1400, R. S., which reads:

"The county boundaries of the counties in this state as now recognized and established are adopted as the true boundaries of such counties, and the acts creating such counties and defining the boundaries are continued in force."

Under this article it would be improper for the district court to undertake to change an established and definitely marked boundary line between counties theretofore recognized and established as the true line, and this is true though the line had been incorrectly run. That is the effect of the ruling in Stevens County v. Palo Pinto County (Tex. Civ. App.) 155 S. W. 1006, and Hale County v. Lubbock County (Tex. Civ. App.) 194 S. W. 678, cited by appellant.

[4] The line in controversy here is a straight line running from the mouth of San Francisco river where it empties into the Rio Grande to the Barella (Varilla) Springs. The acts creating Presidio and Pecos counties fixed that as the dividing line. That is the line which Nelson ran in 1879. That is the line which Estes ran in 1922. Assuming, as the trial court evidently did, that Nelson actually ran the line in 1879, yet the power to resurvey and re-establish the Nelson line clearly arises upon the fact, as the trial court found, that the Nelson line had become indefinite and undefined.

[5] Appellant submits this proposition:

"The report of the surveyor appointed by the court shows upon its face that the same was not in conformance with the order of the court, which was to run the Nelson line, but same showed a different bearing or starting point from the original Nelson line, and therefore could not conform to the Nelson line as the court so ordered, and could not be the original Nelson line, which was the boundary between the two counties."

This is not well taken. The reports of both Nelson and Estes show that the line begins on a bluff on the west side of the San Francisco where it empties into the Rio Grande. It is true that in Nelson's report the direction from the beginning point to Barella Springs is given as N. 48° 25′ W., whereas Estes gives the directions as N. 50° 47′ W., but course and distance is the least reliable of all calls, and readily yields to a call for fixed and permanent natural objects. Furthermore, in the absence of a statement of facts, it must be assumed that this discrep-

ancy in course was satisfactorily explained. Certainly this discrepancy alone would not warrant this court in holding that Estes did not follow the Nelson line.

In some of the propositions advanced by appellants the contention is made that under its petition the action of the court in appointing the surveyor and rendering the judgment herein was unwarranted. Appellants' petition upon its face shows that the issue is one of boundary, and under the pleadings of the appellee the court's action and judgment was warranted and proper in view of article 1385.

Finding no error, the judgment is affirmed.

⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes