## TRAVIS COUNTY v. WILLIAMSON COUNTY. (No. 7182.)

Court of Civil Appeals of Texas. Austin. Jan. 25, 1928.·

Rehearing Denied March 14, 1928.

**1. Counties** <b>⊂⇒8</b>—**Survey of county boundary line in 1883 contrary to statutes then in force was illegal.**

Survey in 1883 of boundary line between counties which was made under orders of the commissioners' court, instead of the county court of respective counties as required by statutes in force at that time, was illegal.

**2. Counties** <b>⊂⇒8</b>—**Survey in 1859 of part of county boundary line was not illegal where not prohibited by statutes then in force.**

A survey in 1859 of only a part of boundary line between counties was not illegal where there were no provisions in statute in force at time requiring whole of county boundary line to be surveyed or that survey of only portion in dispute would not be authorized.

**3. Counties** <b>⊂⇒8</b>—**Plaintiff county held to have burden of proving alleged recognition by both counties of surveys establishing boundary line.**

Where, in dispute between counties as to county boundary line, plaintiff county alleged that line had been definitely established and marked and been recognized for many years by respective counties as boundary line, plaintiff county had burden of proving recognition of surveys by the two counties.

**4. Counties** <b>⊂⇒8</b>—**Possession for length of time to acquire title by disseisin is prerequisite to establishment of recognized or marked boundary line between counties (Rev. St. 1925, art. 1606).**

Under Rev. St. 1925, art. 1606, possession for sufficient length of time as may give title by disseisin is a necessary prerequisite to the establishment of an agreed or recognized or established and marked boundary line between counties.

**5. Boundaries** <b>⊂⇒46(3)</b>—**Counties** <b>⊂⇒8</b>—**Where possession by parties or counties is retained after attempted or agreed establishment, of boundary line, proof must be clear that it was not adverse.**

Where parties or counties remain in possession after an attempted or agreed survey or

establishment of a boundary line, the proof must be clear that possession was not adverse.

**6. Counties** <b>⊂⇒8</b>—**Alleged boundary line between counties held not binding where it was never recognized and defendant county was in adverse possession of land contrary to alleged boundary line (Rev. St. 1925, arts. 1591 and 1606).**

In dispute between counties as to common boundary line wherein plaintiff county based its claims on alleged definitely established and recognized line pursuant to surveys, *held*, that, under Rev. St. 1925, arts. 1591 and 1606, such alleged boundary line was not binding where there was no proof that counties ever went into possession of land in accordance with such surveys, and the undisputed evidence showed that defendant county was in adverse possession of land claimed by plaintiff county based on such boundary line.

On Motion for Rehearing.

**7. Counties** <b>⊂⇒8</b>—**Adoption by commissioners' courts of reports of surveyors appointed to determine county boundary line was not judicial determination and establishment of line.**

A mere formal adoption or approval by respective commissioners' courts of reports and field notes of surveyors appointed to determine boundary line between counties did not constitute a judicial determination and establishment of boundary line which could not be destroyed by failure to recognize it for a long period of years, since another survey in accordance with field notes is necessary to actually mark and establish line on the ground.

**8. Counties** <b>⊂⇒8</b>—**Where alleged boundary line had never been actualy marked on ground or recognized, new line should be established to follow permanent natural objects readily found pursuant to statute defining boundary line.**

Where disputed boundary line between counties, alleged to have been established by adoption of surveyors' reports and field notes, had never been actually marked upon the ground as required by law nor actually recognized by the counties, line should be established and marked to follow divide between waters of rivers named, as provided by statutes defining said boundary line, which divide constitutes a permanent natural object capable of being readily found and marked upon the ground.

Appeal from District Court, Burnet County; J. H. McLean, Judge.

Action by Williamson County against Travis County. From the judgment, defendant appeals, and plaintiff cross-assigns error. Reversed and remanded, with instructions.

Ike D. White and E. Cartledge, both of Austin, for appellant.

W. H. Nunn and Wilcox & Graves, all of Georgetown, for appellee.

BLAIR, J. This appeal involves a controversy over the common boundary line between Travis and Williamson counties, which

---

arose as follows: Various legislative acts from 1846 to 1879 fixed said boundary line as beginning at the northeast corner of land granted to Isaac Casner, being the north corner of Bastrop county; thence with the meanders of the divide between the waters of the Brazos and Colorado rivers to the intersection of the southeast line of Burnet county, at a point 26 degrees west from the west corner of John Carothers' league No. 6 on the west fork of the San Gabriel river. Articles 911 and 925, R. S. 1879; Batts' Anno. Statutes 1895, vol. 1, pp. 423 and 429. In 1859, under orders of the county court of said counties, respectively, Dennis Corwin, for Travis, and Wm. K. Duerson, for Williamson, undertook, and, according to their reports which were formally adopted by the respective county courts appointing them, did survey a part only of said boundary line. In 1883, under orders of the commissioners' courts of said counties, respectively, John E. Campbell, for Travis, and A. S. Howren, for Williamson, surveyed the whole of said boundary line, and their reports were formally adopted by the respective commissioners' courts appointing them. Neither court ordered these surveyors to do so, but their respective reports show that they tried to follow or resurvey and re-establish the Corwin-Duerson line of 1859 on the portion covered by it, and with variations which do not appear to be material succeeded in doing so. In 1927, Williamson county sued Travis county under provisions of articles 1591 and 1606, R. S. 1925, alleging that the two surveys were identical over the portion of the line covered by both; that by them the entire boundary line had been definitely established and well marked upon the ground and had been for many years recognized as the boundary line, except as to a small portion or segment of the line covered by both surveys and specifically described, on which the markings had become vague and indefinite; that Travis county and its officers had for many years failed and refused to recognize and be bound by said common boundary line so established on this particular portion or segment, were asserting and claiming the line to be farther north and east of where same was so established, and were unlawfully asserting jurisdiction over property of the value of $150,000, which was subject to taxation in Williamson county by virtue of said surveys. Williamson county prayed that the court declare the common boundary line to be fixed and established by the Campbell-Howren survey of 1883, and that the portion of the line alleged to be in controversy and on which the markings had become vague and indefinite be resurveyed and re-established in accordance with that survey. By answer and cross-action Travis county contended in the trial court and here contends, among other contentions, as follows:

(1) That the 1883 Campbell-Howren line was illegal because run under orders of the commissioners' court, instead of by action of the county court of said counties, as required by the statutes then in force.

(2) That the 1859 Corwin-Duerson line was illegal because it was a survey of only a part of the boundary line, whereas the law then existing required that the whole of said line be run.

(3) That neither of said surveys had ever been recognized by Travis county.

Travis county prayed that the court appoint competent surveyors to survey the whole of said boundary line in accordance with the acts of the Legislature fixing it, and that they be directed to fix, mark, and establish said line in accordance with law.

On a trial to the court without a jury judgment was rendered declaring the 1883 survey illegal upon the ground contended for by Travis county, but the 1859 survey was declared to be legal, and upon these conclusions of law the court ordered the whole of the line surveyed in accordance with line fixed by the legislative acts, supra, but directed the surveyors appointed to follow the 1859 survey on the portion of the line covered by it; and from this judgment Travis county has appealed, contending that the trial court should have sustained all of its above contentions and rendered judgment in accordance with its prayer. Williamson county has cross-assigned as error the action of the trial court in declaring the 1883 survey illegal.

[1] The trial court correctly held the 1883 survey illegal because made under orders of the commissioners' court, instead of the county court of the respective counties at interest as required by the statutes in force at that tme. Gammel's Laws, vol. 8, p. 1437; Kaufman County v. McGaughey (a decision by this court) 32 S. W. 927, Id., 11 Tex. Civ. App. 551, 33 S. W. 1020. Williamson county attacks the McGaughey decision as dictum on the point in question and as an incorrect pronouncement of the law, contending that commissioners' courts also had jurisdiction over county boundary line surveys by virtue of article 686 to 691, R. S. 1879. These contentions were directly passed upon in the McGaughey Case and for that reason are overruled, and also because the legality or illegality of this survey is only incidental to Travis county's third contention that whether legal or illegal it had never recognized the survey.

[2] There is no merit to Travis county's contention that the 1859 survey was illegal because a survey of only a part of the boundary line. We find no provision in the statute under which this survey was made requiring that the whole of a county boundary line be surveyed or that a survey of only a portion in dispute would not be authorized. Gammel's Laws, vol. 2, p. 1537.

[3] But since we are of the opinion Trav-

is county's third contention, that it had never recognized either of said surveys or lines so established, should be sustained under the undisputed evidence, the question of the legality or illegality of these surveys becomes immaterial, and the trial court should have instructed the surveyors appointed to survey, mark, and establish the said boundary line as fixed by the various legislative acts, supra, instead of requiring them to resurvey and re-establish the 1859 line on the portion covered by it.

In reference to the recognition of said surveys, Williamson county alleged that by them the said boundary line had been definitely established and marked upon the ground and had been for many years recognized by the respective counties as the boundary line, but that Travis county was unlawfully asserting jurisdiction to the north and east of said established line at a particularly defined and described point, which was alleged to be the only portion of said boundary line in controversy. Travis county denied these allegations and pleaded that it had never recognized the surveys, and that no part of the said boundary line had ever been legally surveyed, established, and marked upon the ground as required by law. On the issue thus raised by the pleadings Williamson county had the burden to prove recognition of the surveys by the two counties. It offered in evidence the various orders of the respective courts of the counties at interest appointing the surveyors, their reports and field notes, and the respective orders of the courts of the counties approving said reports and field notes, and rested its case. Travis county then showed by undisputed evidence that as far back as there were any records of such matters it had assumed jurisdiction over the lands and properties situated thereon lying immediately north and east of that particular portion or segment of the boundary line fixed by these two surveys and alleged by Williamson county to be the only portion in controversy, by levying and collecting taxes thereon, and by otherwise assuming such control as a county may over lands and properties situated within its boundary; that the exercise of such jurisdiction was begun long before the survey of 1883 and had continued ever thereafter, and covering a period of nearly 50 years; that Williamson county has exercised jurisdiction over lands lying west or southwest of the line established by these surveys by taxing them, and was doing so at the time this suit was filed. The proof is also undisputed that a line dividing the waters of the Brazos and Colorado rivers can be definitely fixed and established and marked on the ground; that such a line lies north and east of the line established by the two surveys at the point alleged to be in controversy; and that lands and properties over which Travis county had assumed jurisdiction for nearly 50

years was on its side of such a line. There is no proof that either Travis county or Williamson county had ever been in possession of or exercised jurisdiction over the lands or properties along the particular portion alleged by Williamson county to be in dispute by virtue of or in accordance with these surveys.

In the case of George v. Thomas, 16 Tex. 89, 67 Am. Dec. 612, it was held:

"Where the parties have agreed upon and marked a boundary line, and the possession is in accordance with it for such a length of time as may give title by disseisin, the line cannot be disturbed, although found to be erroneously established, unless there be clear proof that the possession was not adverse. 4 Shep. 23."

The authority of 9 C. J. 231, also reannounces the well-established rule as to boundary agreements, that:

"While execution of the agreement by taking possession of the land is necessary, it is not necessary that this possession should have been continued for the period requisite to acquire title by adverse possession. A possession for such time as will show the intent is sufficient."

The Commission of Appeals held in the case of Hunt County v. Rains County, 116 Tex. 277, 288 S. W. 808, that the above rules as to a divisional line between individuals were applicable to a divisional line as between counties. See, also, Pecos County v. Brewster County (Tex. Civ. App.) 250 S. W. 310.

[4-6] The act of the Legislature (article 1606, R. S. 1925), providing for validation of recognized county boundary lines and invoked by Williamson county here, reads:

"The county boundaries of the counties in this state as now recognized and established are adopted as the true boundaries of such counties, and the acts creating such counties and defining the boundaries are continued in force."

It is clear from the above decisions and the statute quoted that possession for a sufficient length of time as may give title by disseisin is a necessary prerequisite to the establishment of an agreed or recognized or established and marked boundary line between counties. It is also clear that where parties or counties remain in possession after an attempted or agreed survey or establishment of a boundary line, the proof must be clear that the possession was not adverse. The possession as relates to counties is the exercise of jurisdiction over the lands or properties involved, such as levying and collecting taxes thereon, or assuming such other control over them as counties may assume over other properties within their boundaries. There is no proof that the counties here ever went into possession of the lands in accordance with these surveys, but the contrary is shown by undisputed evidence, and the possession of lands claimed by Williamson county by virtue of these surveys is

alleged to be in the possession of Travis county adversely to it, and the proof is undisputed that such possession was and is adverse to Williamson county.

It follows from what has been said herein that we reverse the judgment of the trial court, and we here direct the trial court to declare the said boundary line to be fixed and established by the various acts of the Legislature, supra, and to order and direct the surveyors appointed in the premises to survey, establish, and mark said line as required by law.

Reversed and remanded, with instructions.

### On Motion for Rehearing.

The contention is made on rehearing that since we hold the 1859 survey to be a legal one, it should now be followed. We only hold the survey legal with respect to the question discussed, but we further hold that the line described by the field notes of the 1859 survey was never actually recognized by either county and was never marked upon the ground as required by law.

[7, 8] The contention is also made that the filing and approval by the respective commissioners' courts of the reports and field notes of the surveyors appointed constituted a judicial determination and establishment of the boundary line here involved, which neither county could annul nor destroy by merely failing to recognize it for a long period of years. The contention is without merit. One of the primary purposes of the statutes with regard to county boundary surveys is to provide for surveying and actually marking of such a line upon the ground in order that all concerned may see it and be informed of their respective rights in the premises. Nothing short of a substantial marking upon the ground as provided by statute will suffice to establish a county boundary line. The most that can be said for the surveys of 1859 and 1883 is that field notes were made and approved which described certain natural objects with courses and distance calls from which a line might be established on the ground. Those field notes and surveys do not show that the line was actually marked and identified on the ground. The proof is to the contrary. There is no showing whatever that survey lines were marked at the point where the county line was supposed to have crossed them so that landowners might know their rights. And the mere formal adoption or approval by the commissioners' courts of the survey-

or's reports and field notes will not suffice, because another survey in accordance with the field notes so approved is necessary to actually mark and establish the line upon the ground. Each county is here insisting that at least a portion of the line is indefinite and unmarked, and each is asking a survey with legal markings upon the ground. The only way to now establish the line is to again survey, either in accordance with the field notes which were never actually recognized though formally adopted, and which would be merely a course and distance survey, or in accordance with the dividing waters of the rivers named and the line fixed by the statutes. Certainly the Legislature did not intend by the various validating acts with regard to "established" county boundary lines to bind a county to a line merely because it had adopted reports and field notes of surveyors appointed to survey it, where the undisputed evidence shows that no actual markings upon the ground were ever made locating the line. The boundary line the Legislature intended to validate was one actually established and marked upon the ground, and not a line which might be established from course and distance calls of approved field notes of surveyors appointed to survey such line, but which had never been actually marked upon the ground as required by law, and which had never been actually recognized by the counties. We therefore conclude that the line now to be established and marked should follow the divide between the waters of the rivers named and as provided by the statutes defining said boundary line, which divide constitutes a permanent natural object capable of being readily found and marked upon the ground. In that conclusion we are supported by the case of Pecos v. Brewster County, supra, which is very similar in point of fact to this case. In that case a resurvey was ordered because the surveyor making first one did not build nor erect monuments on the line as required by law, for which reason the line was declared to be an unmarked and unidentified line. Such is the exact situation here presented. Although two surveys of the line have been made, it was not marked upon the ground and the parties at interest do not know, nor have they ever known, its exact location on the ground according to the undisputed evidence.

The motion will be overruled.

Overruled.