

# NUMBER 13-14-00293-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

SAN PATRICIO COUNTY, TEXAS,                                    Appellant,

v.

NUECES COUNTY, TEXAS AND NUECES
COUNTY APPRAISAL DISTRICT,                                   Appellees.

## On appeal from the 94th District Court
## of Nueces County, Texas.

# OPINION

## Before Chief Justice Valdez and Justices Rodriguez and Longoria
## Opinion by Justice Rodriguez

Appellant San Patricio County, Texas appeals from a summary judgment entered in favor of appellees Nueces County, Texas and Nueces County Appraisal District (NCAD). On appeal, San Patricio County contends that the trial court erred in granting Nueces County and NCAD's motion for summary judgment and entering a take nothing

judgment against San Patricio County because: (1) the 94th District Court in Nueces County lacked jurisdiction; (2) alternatively, venue was proper in Refugio County; (3) Nueces County mounted an improper collateral attack on the 2003 Judgment; (4) San Patricio County provided more than a scintilla of evidence in response to Nueces County and NCAD's no-evidence motion; and (5) the summary judgment evidence established San Patricio County's right to summary judgment, conclusively demonstrating that the fourteen subject properties identified below (the Disputed Properties) were within San Patricio County under the terms of the 2003 Judgment or, at least, raising fact issues as to whether the Disputed Properties were within San Patricio County under the terms of the 2003 Judgment. We reverse and remand with instructions to vacate and transfer.

## I. BACKGROUND

### A. 2003 Judgment

In 2003, after years of litigation between San Patricio County and Nueces County,[1] the 135th District Court of Refugio County entered judgment (the 2003 Judgment) establishing a common boundary between the two counties. The 2003 Judgment provided, in pertinent part, the following:

> The Court granted the Motion for Summary Judgment filed by Defendant Nueces County by a judgment signed May 31, 1989. The effect of the summary judgment was to determine solely on the basis of statutory construction that the common boundary of San Patricio and Nueces Counties is the east bank of the Nueces River, the northerly shorelines of Nueces Bay and Corpus Christi Bay, and the westerly shoreline of Redfish Bay. The summary judgment left remaining for trial the issue of whether natural and artificial modifications to the Shoreline of San Patricio County form a part of San Patricio County. On December 17, 2002, the Court tried that issue. Plaintiff and Defendant appeared by their lawyers and

---

[1] NCAD was not a party to the lawsuit that resulted in the 2003 Judgment.

2

announced ready. The Court heard evidence. The Court has determined where the common boundary line between San Patricio and Nueces Counties is located. All issues in this case have now been disposed of.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the common boundary line between San Patricio and Nueces Counties is located as follows:

. . . .

San Patricio County shall lie northerly of that line and, in addition, San Patricio County shall include the parts of Donnell and Ingleside Points detached from the mainland by the La Quinta ship channel and the waters of La Quinta ship channel intervening between the detached parts of Donnell and Ingleside Points and the mainland, shall include the part of Dagger Island detached from the mainland by the Intercoastal ship channel and the waters of the Intercoastal ship channel intervening between the detached part of Dagger Island and the mainland . . . .

Nueces County shall lie southerly of that line and, less the parts of Donnell and Ingleside Points detached from the mainland by the La Quinta ship channel and the waters of La Quinta ship channel intervening between the detached parts of Donnell and Ingleside Points and the mainland, less the part of Dagger Island detached from the mainland by the Intercoastal ship channel and the waters of the Intercoastal ship channel intervening between the detached part of Dagger Island and the mainland . . . .

As used in this description the term "shoreline" means the point at which the waters of the bays meet the mainland at mean lower low tide. Past and future natural and artificial modifications to the shoreline of San Patricio County shall form a part of San Patricio County.

## B. Present Lawsuit

### 1. The Petition

In 2009, San Patricio County brought this current lawsuit in 135th District Court of Refugio County, seeking a declaration that the Disputed Properties were within San Patricio County under the terms of the 2003 Judgment and that the 2003 Judgment bound Nueces County and NCAD by its terms. It also sought to enjoin Nueces County and NCAD from attempting to tax or otherwise exercise jurisdiction over those properties.

In its petition, San Patricio County claimed, among other things, that "[v]enue and jurisdiction [were] mandatory in Refugio County under [s]ection 72.009 of the Texas Local Government Code . . . ." *See* TEX. LOC. GOV'T CODE ANN. § 72.009 (West, Westlaw through 2015 R.S.). It also asserted that "[c]ertain Nueces County officials . . . have refused to recognize and honor certain portions of the boundary declared by the [2003 J]udgment." According to San Patricio County, it filed suit because, beginning in 2008, "Nueces County and NCAD periodically asserted jurisdiction and authority over at least 14 properties located within San Patricio County under the terms of the 2003 Boundary Judgment."

San Patricio identified the following fourteen Disputed Properties:

> Oxy's Pier: A pier and related facilities owned by Occidental Chemical Corporation (Oxy) and that extend from Oxy's facilities on the mainland of San Patricio County into the La Quinta Ship Channel and the waters of the La Quinta Ship Channel intervening between the detached parts of Donnell and Ingleside Points and the mainland, and are appurtenant to and improvements of Oxy's real property in San Patricio County;

> Oxy's Submerged Land: Submerged land owned by Oxy and consisting of approximately 36.663 acres, attached to the mainland of San Patricio County and located in the La Quinta Ship Channel and waters of the La Quinta Ship Channel intervening between the detached parts of Donnell and Ingleside Points and the mainland;

> Sherwin's Pier: A pier and related facilities owned by Sherwin Alumina Company (Sherwin) and that extend from Sherwin's facilities on the mainland of San Patricio County into the La Quinta Ship Channel and the waters of the La Quinta Ship Channel intervening between the detached parts of Donnell and Ingleside Points and the mainland, and are appurtenant to and improvements of Sherwin's real property in San Patricio County;

> Sherwin's Submerged Land: Submerged land owned by Sherwin and consisting of approximately 41.458 acres that are attached to the mainland of San Patricio County and located in the La Quinta

4

Ship Channel and waters of the La Quinta Ship Channel intervening between the detached parts of Donnell and Ingleside Points and the mainland;

Kiewit's Submerged Land No. l:   Submerged land owned by Kiewit Offshore Services, Ltd. (Kiewit) 13 and consisting of the approximately 74. 723 acres attached to the San Patricio County mainland and located in the La Quinta Ship Channel and waters of the La Quinta Ship Channel intervening between the detached parts of Donnell and Ingleside Points and the mainland;

Kiewit Submerged Land No. 2:   Submerged land owned by Kiewit and consisting of the approximately 105.477 acres attached to the San Patricio County mainland and located in the La Quinta Ship Channel and waters of the La Quinta Ship Channel intervening between the detached parts of Donnell and Ingleside Points and the mainland;

Kiewit's Pier:   Former Navy pier and related facilities owned by Kiewit and that extend from Kiewit's facilities on the mainland of San Patricio County into the La Quinta Ship Channel and the waters of the La Quinta Ship Channel intervening between the detached parts of Donnell and Ingleside Points and the mainland, and are appurtenant to and improvements of Kiewit's real property in San Patricio County;

Flint Hills Pier aka Flint Hills New Dock:   Former Navy loading pier/small craft pier, and related facilities owned by Flint Hills Resources LP and that extend from Flint Hills Resources LP's facilities on the mainland of San Patricio County, and are appurtenant to and improvements of Flint Hills Resources LP's real property in San Patricio County;

Flint Hills Facility aka Flint Hills Ex-Navy Dock:   Former Navy Facilities owned by and that extend from Flint Hills Resources LP's facilities on the mainland of San Patricio County, and are appurtenant to and improvements of Flint Hills Resources LP's real property in San Patricio County;

Signet Maritime Submerged Land No. l:   Submerged land owned by Signet Maritime Corporation, consisting of approximately 1.80 acres attached to the San Patricio County mainland and located in the La Quinta Ship Channel and waters of the La Quinta Ship Channel intervening between the detached parts of Donnell and Ingleside Points and the mainland;

Signet Maritime Submerged Land No. 2: Submerged land owned by Signet Maritime Corporation, consisting of approximately 3.887 acres attached to the San Patricio County mainland and located in the La Quinta Ship Channel and waters of the La Quinta Ship Channel intervening between the detached parts of Donnell and Ingleside Points and the mainland;

Signet Maritime Submerged Land No. 3: Submerged land owned by Signet Maritime Corporation, consisting of approximately 4.855 acres attached to the San Patricio County mainland and located in the La Quinta Ship Channel and waters of the La Quinta Ship Channel intervening between the detached parts of Donnell and Ingleside Points and the mainland;

Signet Maritime Submerged Land No. 4: Submerged land owned by Signet Maritime Corporation, consisting of approximately 1.78 acres attached to the San Patricio County mainland and located in the La Quinta Ship Channel and waters of the La Quinta Ship Channel intervening between the detached parts of Donnell and Ingleside Points and the mainland; and

Corpus Christi LNG's Submerged Land: Submerged land owned by Corpus Christi LNG/Cheniere Energy Inc., consisting of approximately 52.25 acres attached to the San Patricio County mainland and located in the La Quinta Ship Channel and waters of the La Quinta Ship Channel intervening between the detached parts of Donnell and Ingleside Points and the mainland.

### 2.    Answers and Cross Action

Nueces County and NCAD filed answers subject to their venue challenges. They generally denied San Patricio County's claims and asserted affirmative defenses. Nueces County filed a cross action, claiming that the properties it was taxing were located within Nueces County and that certain portions of the 2003 Judgement were void because they were advisory opinions.

### 3.    Venue

In its petition, San Patricio County claimed, among other things, that venue as well

as jurisdiction was mandatory in Refugio County under section 72.009 of the local government code. *See id.* In response to the position San Patricio County took in its petition, Nueces County filed a motion to transfer venue, asserting that venue in Nueces County was mandatory under sections 15.015 and 65.023(a) of the civil practice and remedies code. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 15.015, 65.023 (West, Westlaw through 2015 R.S.). Section 15.015 provides that in a suit against a county, venue is mandatory in the county being sued—here, Nueces County. *See id.* § 15.015. Section 65.023 provides that a suit seeking injunctive relief is mandatory in the county of the defendant's residence—here, also Nueces County. *See id.* § 65.023. In the alternative, Nueces County claimed permissive venue in Nueces County under the general venue statute. *See id.* § 15.002(a) (West, Westlaw through 2015 R.S.) (providing that venue is proper where all or a substantial part of the events or omissions giving rise to the claim allegedly occurred). NCAD filed its own venue motion, agreeing that sections 65.023 and 15.002(a) provided a basis for its motion to transfer venue. NCAD also asserted that in a "suit against an appraisal office," section 43.02 of the Texas Property Tax Code mandates that "[v]enue is in the county in which the appraisal district is established," which in this case is Nueces County. *See* Tex. Prop. Tax Code Ann. § 43.02 (West, Westlaw through 2015 R.S.).

On November 10, 2009, over San Patricio County's objections, the Refugio County Court granted Nueces County's and NCAD's venue motions. The court then transferred the case to Nueces County.

On May 20, 2010, San Patricio County challenged the Refugio County Court's venue determination by filing a petition for writ of mandamus, arguing that venue was

mandatory under section 72.009 of the local government code. *See In re San Patricio Cnty., Texas,* No. 13-10-00296-CV, 2010 WL 2471466, at *1 (Tex. App.—Corpus Christi June 11, 2010 [mand. denied]) (orig. proceeding) (per curiam) (mem. op.). It also argued that section 72.009 was a jurisdictional statute and not just a venue statute. In a per curiam memorandum opinion, this Court set out that we were of the opinion that San Patricio County had "not shown itself entitled to the relief sought" and denied the petition for writ of mandamus. *Id.* Although we cited authority in our memorandum opinion that included section 72.009 of the local government code, we did not address the merits of the case. San Patricio County then petitioned the Texas Supreme Court for a writ of mandamus. The supreme court also denied San Patricio County's petition without addressing the merits of its complaint. After the Texas Supreme Court denied San Patricio County's petition for writ of mandamus, the case proceeded in the 94th District Court in Nueces County.

### 4. Motions for Summary Judgment

In January 2014, Nueces County and NCAD filed a second amended no-evidence and traditional motion for summary judgment. *See* TEX. R. CIV. PROC. 166a(b), (i). And San Patricio filed a motion for summary judgment. *See id.* at 166a(c). Among other arguments, each party claimed that it had established jurisdiction and authority over the Disputed Properties.[2]

### 5. The Summary Judgment

On April 23, 2014, after overruling each party's objections to the other's summary-

---

[2] Nueces County and NCAD acknowledge on appeal that they did not assert a collateral attack on the 2003 Judgment as a ground for summary judgment in their second amended motion.

judgment evidence, the 94th District Court in Nueces County (1) granted Nueces County and NCAD's second amended no-evidence and traditional motion for summary judgment, without stating the grounds, (2) ordered that San Patricio County take nothing and denied its request for declaratory and injunctive relief, (3) dismissed, with prejudice, San Patricio's claims against Nueces County and NCAD, (4) denied San Patricio County's motion for summary judgment, and (5) denied "[a]ll relief not expressly granted." San Patricio County appeals from this judgment.

## II. JURISDICTION

By its first issue, San Patricio County contends that "[t]he [Nueces County 94th District Court] lacked jurisdiction over this cause because only a district court in Refugio County has jurisdiction to adjudicate a suit brought by San Patricio County against Nueces County for the purposes of resolving a boundary dispute between the two counties." San Patricio County generally asserts that the controversy in this declaratory judgment action involves a determination regarding whether certain properties are in San Patricio County or whether they are in Nueces County under the terms of the 2003 Judgment.

### A. Standard of Review

We review subject-matter jurisdiction, an issue of law, de novo. *City of Corpus Christi v. Maldonado*, 398 S.W.3d 266, 269 (Tex. App.—Corpus Christi 2011, no pet.) (citing *Singleton v. Casteel*, 267 S.W.3d 547, 550 (Tex. App.—Houston [14th Dist.] 2008, pet. denied)). In reviewing subject-matter jurisdiction, we look to the pleadings, construing them liberally in the plaintiff's favor, to determine whether a pleader has alleged facts that affirmatively demonstrate a trial court's subject-matter jurisdiction. *Id.*;

9

*Ryan v. Rosenthal*, 314 S.W.3d 136, 141 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)); *see Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993).

## B.    Applicable Law

The Texas Constitution and state statutes confer jurisdiction on Texas courts. *Chenault v. Phillips*, 914 S.W.2d 140, 141 (Tex. 1996) (per curiam).   The Texas Legislature amended the county-boundary statute in 1897 to include a section that conferred jurisdiction upon a neutral district court to establish a boundary between counties and to determine where the boundary is located.   *See* TEX. LOC. GOV'T CODE ANN. § 72.009(a)–(b); *Presidio Cnty. v. Jeff Davis Cnty.*, 77 S.W. 278, 279 (Tex. Civ. App. 1903, writ dismissed) (discussing Texas Revised Civil Statute 1895, article 808a, now Texas Local Government Code section 72.009).

Section 72.009, the current statute subject to our review in this case, provides, in relevant part, the following:

> (a)    A county may bring suit against an adjacent county to establish the common boundary line.  The suit must be brought in the district court  of a county in an adjoining judicial district whose boundaries are not affected by the suit and whose county seat is closest to the county seat of the county that brings the suit.
>
> (b)    The district court has jurisdiction to determine where the boundary line is located and may order the line to be re-marked and resurveyed. . . .

TEX. LOC. GOV'T CODE ANN. § 72.009(a)–(b)*.*

> When called upon to determine the meaning and scope of a statutory provision, our primary objective is to ascertain and give effect to the legislature's intent.  TEX. GOV'T CODE ANN. § 312.005 (West 2013); *TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011).   We look to the plain and ordinary meaning and the words of the statute itself as

the best indicator of legislative intent. *Bouldin v. Bexar Cnty. Sheriff's Civ. Serv. Comm'n*, 12 S.W.3d 527, 529 (Tex. App.—San Antonio 1999, no pet.). We may consider the object to be attained and the consequences of a particular construction, among other things. TEX. GOV'T CODE ANN. § 311.023 (West 2013); *see also In re Smith*, 333 S.W.3d 582, 588 (Tex. 2011) (orig. proceeding).

*Nw. Indep. Sch. Dist. v. Carroll Indep. Sch. Dist.*, 441 S.W.3d 684, 690–91 (Tex. App.—Fort Worth 2014, pet. denied) (en banc). "In enacting a statute, it is presumed that . . . a just and reasonable result is intended . . . ." TEX. GOV'T CODE ANN. § 311.021 (West, Westlaw through 2015 R.S.). And "[i]n construing a statute, . . . a court may consider among other matters the . . . object sought to be attained[,] . . . [the] circumstances under which the statute was enacted[,] . . . [and the] consequences of a particular construction . . . ." *Id.* § 311.023 (West, Westlaw through 2015 R.S.). "In interpreting a statute, a court shall diligently attempt to ascertain legislative intent and shall consider at all times the old law, the evil, and the remedy." *Id.* § 312.005 (West, Westlaw through 2015 R.S.). Finally, the statute "shall be liberally construed to achieve their purpose and to promote justice." *Id.* § 312.006 (West, Westlaw through 2015 R.S.).

## C. Discussion

### 1. Does Section 72.009 Provide a Basis for Jurisdiction?

Texas courts, as early as 1929, have addressed the question of the extent of the jurisdiction granted by section 72.009 or its earlier equivalents. In 1929, the Texas Supreme Court determined that it did not have jurisdiction over county boundary controversies unless "the question of law was certified by the Court of Civil Appeals . . . , or where the decision was incident to a cause of action properly before the [supreme] court." *Williamson Cnty. v. Travis Cnty.*, 15 S.W.2d 577, 578 (Tex. Comm'n

11

App. 1929, opinion adopted). The court concluded that Williamson County's allegation "of wrongful exercise of the taxing power in the disputed strip . . . [wa]s merely an incident to the issue of boundary, and [wa]s decided with it." *Id.* Because the supreme court did not have jurisdiction to review boundary controversies at that time and because the tax question was neither certified nor incident to a dispute properly before the court, it dismissed Williamson County's writ of error for want of jurisdiction. *Id.* Interestingly, the Texas Supreme Court set out that counties have peculiar rights in the determination of their boundary lines and described these cases as "cases of boundary." *Id.*

> Such boundary lines determine the limits within which the county, as an agency of the state, functions, and over which it has and exercises jurisdiction. The establishment of its boundary line, therefore, is a process of recovering control over the lands rightfully within its jurisdiction, for the purposes of exercising its possession in the manner provided by law for the interest of its inhabitants and the state at large.

*Id.*; *see Pecos Cnty. v. Brewster Cnty.*, 250 S.W. 310, 312 (Tex. Civ. App.—El Paso 1923, writ dism'd w.o.j.) (setting out that revised civil statute 1911, articles 1385, 1386 (now, sections 72.001 *et seq.*) "clearly confers jurisdiction upon the district court of county boundary disputes and suits"). In sum, *Williamson County* provides that the issues of boundary lines includes incidental matters, giving the term "boundary dispute" a broader meaning than that advocated by Nueces County and NCAD.

Moreover, in *Presidio County*, the 1903 court of civil appeals concluded the following: "It is our opinion that the act giving the district court power to determine where the boundary line is located necessarily embraces power to determine all matters incident to the existence of such line." 77 S.W. at 279. And in *Lampasas County v. Coryell County*, the 1901 court of civil appeals addressed the question of jurisdiction under article

12

808a, now section 72.009, setting out the following:

> The law invoked in behalf of appellant, Lampasas [C]ounty, authorizing county courts to institute proceedings for the establishment of county boundaries, as found in title 23, c. 4, of the Revised Statutes, was amended in 1897 by the addition of article 808a, wherein it was provided that, "notwithstanding" the preceding articles of the chapter [concerning the appointment of surveyors to meet and mark the line], any county "may bring suit against any adjoining county *** for the purpose of establishing the boundary line between them[. Such suit shall be brought in the district court of the county in an adjoining judicial district whose boundaries are not affected by the suit,] *** and said court shall try said cause as other causes and shall have full and complete jurisdiction to determine where such boundary line is located. *** And if in the trial of any such cause it shall be found that the boundary line between the counties involved has never been established and marked, *** said court shall have power to re-establish the same and order it marked." In the petition of Coryell [C]ounty filed in this case it was alleged, among other things, that the boundary line between Lampasas and Coryell counties had in fact been established long prior to the orders by virtue of which Zively was acting, in support of which the proceedings of several prior surveys by virtue of county court orders were set forth. The functions involved in the determination of this question are essentially judicial . . . . *The powers conferred upon the district court by the amended article quoted are very general. It seems to have been the legislative intention that they should be restricted in no degree by uncompleted proceedings on the part of contesting counties. Jurisdiction is conferred "notwithstanding" the preceding articles of the chapter, and "full and complete jurisdiction" is given to determine the location of the boundary line, whether on the trial it shall appear to have been theretofore established or not.* We are of [the] opinion, therefore, that appellant's exceptions to the petition on the ground of a want of jurisdiction in the district court of Bosque [C]ounty were properly overruled . . . .

27 Tex. Civ. App. 195, 196–97, 65 S.W. 67, 68 (1901) (asterisks in original and emphasis added). Although the *Lampasas County* Court addressed jurisdiction in relationship to previous surveys, we believe that the same reasoning applies in this case. *See id.*

The issue in this case is one of boundary. Under section 72.009, the powers conferred on the district court are very general regarding the establishment of a common boundary line. *See* TEX. LOC. GOV'T CODE ANN. § 72.009. We cannot read the statute

13

to be so restrictive as to include only the power to establish the common boundary line and not the power to determine subsequent issues related to the boundary line—such as those brought in this appeal. *See Lampasas Cnty.*, 65 S.W. at 68. From the propositions set out above, we conclude that the act giving the neutral district court power to determine where the boundary line is located necessarily embraces the power of that court to determine all necessary and incidental matters including what property is located within each county along that boundary line should such a question arise at a later date. *See Williamson Cnty.*, 15 S.W.2d at 578; *Presidio Cnty.,* 77 S.W. at 279; *Lampasas Cnty.*, 65 S.W. at 68. In this case, the 135th District Court of Refugio County, under section 72.009, determined the county boundary line between San Patricio County and Nueces County. It therefore also has the general power to determine what property is included within the established boundary line. To hold otherwise would allow another court to effectively reestablish the boundary line, contradicting the intent of the statute. *See* TEX. GOV'T CODE ANN. § 311.023.

So being guided by the earlier courts' conclusions that the power found in section 72.009 to determine where the boundary line is located necessarily embraces the power to determine all matters incident to the existence of such line and liberally construing the statute to achieve the Legislature's purpose and to promote justice, *see* TEX. GOV'T CODE ANN § 312.006, we conclude that the Legislature intended jurisdiction to remain in that district court to determine all subsequent issues necessary and incidental to the establishment of the common boundary line. That court, where suit was filed to establish the county line, has been vested with broad discretion to determine all necessary and incidental matters related to that common boundary line. *See* 35 TEX. PRAC. SERIES §

14

1.6, County and Special District Law (2d ed.) (explaining that, as other courts have concluded, "[o]nce suit is filed in district court to establish the county line, the district court is vested with broad discretion to determine all necessary and incidental matters") (citing *Presidio Cnty.*, 77 S.W. at 279).

### 2. Nueces County's and NCAD's Arguments

#### a. The Underlying Dispute is Not a Boundary Dispute Under Section 72.009, but a Case about Interpreting a Judgment

In response, Nueces County and NCAD contend that the underlying dispute between the two counties "is not a boundary dispute" for the purpose of applying section 72.009. They argue that the fact that a judgment was issued in the prior boundary lawsuit makes this a case about interpreting a judgment, not determining county boundaries. But, as San Patricio County argues, there is nothing in the language of section 72.009 that suggests that the existence of a prior judgment renders a future disagreement over where properties are located within each county's boundary anything other than a boundary dispute. This is of particular importance when, as here, one is considering water boundaries and the effect of natural and artificial modifications, including wharves and piers. *See Texas Seashore Boundary Law: the Effect of Natural and Artificial Modifications*, Carol Eggert Dinkins, 19 HOUS. L. REV. 43 (1972). It is clear that the two counties cannot agree on where the Disputed Properties are located.

The parties do not dispute, and we agree, that the prior lawsuit and 2003 Judgment established the common boundary in this case. However, we disagree with Nueces County's and NCAD's reasoning that this suit does not fall within the purview of section 72.009 because it is not a suit to establish a common boundary line. The proper

15

interpretation of the 2003 Judgment is relevant to the resolution of the current dispute. The fact that the proper interpretation of a judgment is relevant to the resolution of the current dispute does not change the nature of the dispute. The parties simply cannot agree on the location of the Disputed Properties. San Patricio County asserts the properties it seeks to tax fall within its boundaries as defined by the 2003 Judgment. Nueces County and NCAD assert the properties do not fall within San Patricio's defined boundary, and Nueces County claims that portions of the 2003 Judgment addressing the Disputed Properties are only advisory opinions and, therefore, void. Importantly, we note that the 2003 Judgment does not provide for the surveying or marking of the common boundary between San Patricio County and Nueces County; it does not define the boundary by metes and bound. Instead, the 2003 Judgment describes the boundary by reference to the east bank of the Nueces River, the northerly shorelines of Nueces Bay and Corpus Christi Bay, and the westerly shoreline of Redfish Bay. The judgment also declares, with respect to certain past modifications of the subject shorelines, that areas that were formerly part of the mainland but that have been submerged or detached by dredging remain a part of San Patricio County despite their submersion or detachment. And apparently anticipating the changing of the shorelines over time, the 2003 Judgment sets out that "[n]atural and artificial modifications to the shoreline of San Patricio County shall form a part of San Patricio County." The two counties cannot agree on the application of that language to the properties at issue in this lawsuit. Section 72.009 provides the neutral district court with the power to determine these subsequent issues related to the common boundary line. *See Lampasas Cnty.*, 65 S.W. at 68.

In addition, the fact that San Patricio County seeks declaratory or injunctive relief

16

does not change the nature of the controversy, as Nueces County and NCAD argue; the requested relief does not remove it from the operation of section 72.009. *See Presidio County*, 77 S.W. at 278 (involving a disputed boundary line where two counties asserted jurisdiction over the disputed strip and the plaintiff sought an injunction prohibiting the defendant from assessing or collecting taxes); *see also Pecos Cnty.*, 250 S.W. at 310 (discussing a suit filed by Pecos County to establish a boundary line and seeking to enjoin the collection of taxes). The Declaratory Judgment Act "does not extend a trial court's jurisdiction, and a litigant's request for declaratory relief does not confer jurisdiction on a court or change a suit's underlying nature." *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002).

### b. The Law of the Case

Nueces County and NCAD further argue that this Court's previous denial of San Patricio County's mandamus action seeking review of the order transferring venue from Refugio County should be treated as a final determination of the jurisdiction and venue issues under the law of the case doctrine. Nueces County and NCAD claim that this Court and the supreme court properly determined that section 72.009 does not apply in this case. Relying on this argument, Nueces County and NCAD assert that there is no basis on which to revisit the issue now. San Patricio County replies that the denial of its petition for writ of mandamus does not bar consideration of the jurisdictional issues. We agree with San Patricio County.

"The 'law of the case' doctrine provides that a decision of a court of last resort on a question of law will govern a case throughout its subsequent stages." *City of Houston v. Jackson*, 192 S.W.3d 764, 769 (Tex. 2006); *see Briscoe v. Goodmark Corp.*, 102

17

S.W.3d 714, 716 (Tex. 2003). But the "[a]pplication of the law of the case doctrine lies within the discretion of the court, depending on the particular circumstances surrounding that case." *Briscoe*, 102 S.W.3d at 716. Furthermore, "as mandamus is a discretionary writ, 'its denial, without comment on the merits, cannot deprive another appellate court from considering the matter in a subsequent appeal.'" *Perry Homes v. Cull*, 258 S.W.3d 580, 586 (Tex. 2008) (quoting *Chambers v. O'Quinn*, 242 S.W.3d 30, 32 (Tex. 2007) (per curiam)).

This Court's two-page per curiam memorandum opinion denied San Patricio County's writ of mandamus, stating only that we examined and considered the petition and reply and that we determined that "relator has not shown itself entitled to the relief sought." It did not address the issues raised in the original proceeding, discuss the arguments of the parties, or explain the applicable law. *See* TEX. R. APP. P. 52.8(d) (providing that a court is not required to hand down an opinion when denying relief). Our mandamus opinion did not address the merits of the issues in this appeal and is not dispositive here. *See Chambers*, 242 S.W.3d at 32. And while the Texas Supreme Court also denied San Patricio County's petition for writ of mandamus, it did so without issuing an opinion. *See id.* Such a denial "cannot deprive another appellate court from considering the matter in a subsequent appeal." *Id.* In our discretion, we will not apply the law of the case doctrine in this instance. *See Briscoe*, 102 S.W.3d at 716.

### 3. Do the Pleadings Allege Facts that Affirmatively Demonstrate Subject-Matter Jurisdiction under Section 72.009?

According to San Patricio County's petition, it filed suit because, beginning in 2008, "Nueces County and NCAD periodically asserted jurisdiction and authority over at least

14 properties located within San Patricio County under the terms of the 2003 Boundary Judgment." San Patricio County claimed that properties located in "the waters of the La Quinta ship channel intervening between the detached parts of Donnell and Ingleside Points and the mainland," "natural and artificial modifications to the shoreline of San Patricio County," and "piers, docks, marinas, and other improvements that are appurtenant to and constitute improvement to real property that is located in San Patricio Country are located in San Patricio County under the terms of the 2003 Judgment. In relevant part, Nueces County answered, contending that all properties upon which it levied taxes are in Corpus Christi Bay and, thus, in Nueces County. And in both its answer and its cross action, Nueces County asserted, among other things, that the recitation in the 2003 Judgment regarding "the waters of La Quinta Channel," the recitation regarding "past and future natural and artificial modifications to the shoreline of San Patricio County shall form a part of San Patricio County," and the findings regarding past or future changes in the shoreline are advisory opinions and not binding. NCAD answered, asserting, among other things, that "San Pat[ricio County] is promoting an incorrect interpretation of the previous final non-appealable judgment . . . ."

Regarding jurisdiction, San Patricio County claimed in its petition that mandatory jurisdiction was in Refugio County under section 72.009. *See* TEX. LOC. GOV'T CODE ANN. § 72.009. It set out facts identifying Refugio County as the location of the district court that had mandatory jurisdiction to hear the case under section 72.009 and requested that the court take judicial notice of those facts.

The pleadings in this case require a determination of where certain property is located—whether the Disputed Properties are located in San Patricio County or whether

19

they are located in Nueces County under the terms of the 2003 Judgment. The parties are not disputing that the 2003 Judgment established the boundary line. But they are disputing in which county certain land is located in relationship to that line. Finally, San Patricio County identified the 135th District Court of Refugio County as the court with jurisdiction to hear these issues.

### 4.     Summary

Our review of the statute and the case law supports a conclusion that the power to establish a common boundary line under section 72.009 necessarily embraces the power to determine all matters, such as those in this case, that are necessary and incident to the existence of the line. *See* TEX. LOC. GOV'T CODE ANN. § 72.009(a)–(b). And we are not persuaded by Nueces County's and NCAD's arguments that the underlying dispute is not a boundary dispute under section 72.009 or that the law of the case doctrine applies.

Moreover, based on our de novo review and construing the pleadings liberally in San Patricio County's favor, *see Maldonado*, 398 S.W.3d at 269, we also conclude that San Patricio County has alleged facts that affirmatively demonstrate that the 135th District Court of Refugio County has subject-matter jurisdiction in this case. *See Maldonado*, 398 S.W.3d at 269; *Ryan*, 314 S.W.3d at 141 (citing *Miranda*, 133 S.W.3d at 226); *see also Tex. Ass'n of Bus.*, 852 S.W.2d at 446. That court is the neutral district court that has jurisdiction to determine this issue. *See* TEX. LOC. GOV'T CODE ANN. § 72.009(a)– (b).

We sustain San Patricio County's first issue and need not address the remaining issues because they are not dispositive of this appeal. *See* TEX. R. APP. P. 47.1.

20

### III.     CONCLUSION

We reverse the judgment of the trial court rendered on the merits of the case and remand with instructions to vacate and set aside that judgment and to transfer the case to the 135th District Court of Refugio County, Texas.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the
12th day of May, 2016.